## PIKE et al. vs. DOUGLASS & Co.

PRINCIPALS: *What acts of, amount to a ratification, etc.*

If one purchase goods for another without authority, and the person for whom they are purchased receive them and use or sell them on his own account, after being informed that they were purchased for him, this is an implied ratification of the act of the person making the purchase in his name; and if he merely inform the seller that the purchase was unauthorized, this is not sufficient, but he should restore the goods to the seller or pay for them if he convert them to his own purposes.

SAME: *When liable as partners, etc.*

Where one, without authority, purchases goods for persons about to enter into partnership, and in their name and on their credit as partners, and they receive the goods and dispose of them for their own purposes, after being informed that the goods were so purchased, whether they be partners, in fact, or not, they are liable as partners, to the seller for the value of the goods.

PRACTICE: *Judgment affirmed though some error appear.*

Where several instructions are given, though there be error in some, yet, if the judgment upon the whole record is right, it will be affirmed.

APPEAL from *Monroe* Circuit Court.

Hon. M. L. STEPHENSON, Circuit Judge.

*A. H. Garland*, for appellant.

*Rose & Green*, for appellee.

ENGLISH, Sp. J. Hugh Douglass & Co. sued Pike & Walker, in the Monroe circuit court, on an account for goods, wares and merchandise. The defendants answered severally, denying the indebtedness alleged against them. There was a verdict for the plaintiffs, motion for a new trial overruled, bill of exceptions, and appeal by the defendants.

The grounds of the motion for a new trial were:

1. That the verdict of the jury was not sustained by sufficient evidence.

2. That the verdict was contrary to law.

3. That the court erred in giving the instructions marked *two* and *three* asked by the plaintiffs.

4. The court erred in refusing to give the instructions marked *two*, *three* and *five* asked by the defendants.

On the trial the appellees introduced evidence conducing to prove that they were wholesale merchants of Nashville, Tennessee. That about the 30th of September, 1870, Swape, a merchant of Clarendon, Arkansas, known to appellees to be a reliable man, came to their house in Nashville and represented to them that he was authorized to purchase a bill of goods for Pike & Walker, of Clarendon, and that they were responsible and punctual men. On these representations, appellees sold the goods sued on, amounting to $797,45, on sixty days time, charged them to Pike & Walker, shipped them to them, forwarded bill of lading and invoice made out in their names; and that they received the goods, and disposed of them in a store kept by them at Clarendon.

The testimony of Swape conduces to prove that he was authorized by Pike & Walker to purchase the goods for them.

Pike attempted to prove that he had agreed to take Walker as a partner on condition that he would furnish an amount of goods equal in value to the stock that he, Pike, had on hand, and that the goods were purchased on Walker's account and not on his; and that, on ascertaining that Swape had purchased the goods in the name of Pike & Walker, he repudiated the purchase and advised appellees of his want of authority.

Walker attempted to shift the liability on to Youngblood, who was indebted to him, and was to pay him in money or goods.

Taking all the evidence together, it was conflicting; and whilst the liability of Walker was, we think, clearly enough

made out, the liability of Pike was not so clearly established. But the jury found a verdict against both of them, and the court below refused to grant a new trial, and if it may be thought that the preponderance of evidence is not in favor of the verdict, there is certainly no want of evidence to sustain it.

The appellees moved the court to give the jury nine instructions — some of which were given and some refused. The appellants moved for six instructions, some of which were given and others refused. And the court of its own motion, gave four instructions, which were not objected to on either side.

The second instruction, given at the instance of the appellees, and of which the appellants complain, is as follows: " 2. If the jury believe from the evidence that the goods in question were purchased, in the names of the defendants, by a person unauthorized, but, after the purchase, were received by them, and used and disposed of as their own, after a knowledge that they had been purchased in their names, this much will render them responsible for their price and value, and the jury will find for the plaintiffs."

There were two leading questions before the jury upon all the evidence : First, whether Pike & Walker authorized Swape to purchase the goods for them ; and second, whether if they did not authorize him to purchase the goods for them, as their agent, they impliedly ratified the purchase by receiving the goods, and using or disposing of them for their own purposes, after being informed that the goods were purchased of the appellees in their names, and upon their credit.

The instruction copied above relates to this second question, and expresses the law substantially correct. If one purchase goods for another without authority, and the person for whom they are purchased receives them and uses or sells them on his own account, after being informed that they were pur-

chased for him, this is an implied ratification of the act of the person making the purchase in his name.    Story on Agency, 253.    And if, on receiving the goods, and being informed that they were purchased in his name, he merely informs the seller that the purchase was unauthorized, this is not enough, but he should restore the goods to the seller, or pay for them if he converts them to his own purposes.    This is but honest and fair conduct.

The third instruction given at the instance of the appellees, of which the appellants complain, is as follows: " 3. If the jury believe from the evidence that the defendants were undertaking business together at the time the goods in question were purchased in their names by an agent, or when they came to their hands and were used by them, this fact will constitute them copartners as to outside parties, even though they may not in point of fact have been partners as between themselves." This instruction, taken by itself, is objectionable.    A partnership may extend to all the business of the parties, or to a single branch thereof, or to a single adventure, or even to a single thing.    Story on Part., 81.

If the appellants being about to enter into partnership, authorize Swape to purchase goods for them, and he accordingly purchased them of the appellees, they would be liable to them as partners for the value of the goods, whether, as between themselves, they had perfected their partnership agreement or not.    And so, if Swape purchased the goods for them and in their names as partners, and they received them, and disposed of them for their own purposes, after being informed that they were so purchased, they were liable to the appellees for the value of the goods, as partners.    But the use of the goods, without a knowledge that they had been purchased in their names and upon their credit, would not be a ratification of an unauthorized purchase.

If this had been the only instruction given to the jury, it might have misled them, but taken in connection with others in which the same principle was more fully and accurately expressed, and the case coming up on the refusal of the court below to grant a new trial, on the whole record, the judgment should not be reversed for inaccurate or defective expressions in a single instruction. *Sweeptzer v. Gaines et al.*, 19 Ark., 96.

The second instruction moved by the appellants, and refused by the court, is as follows: "2. If the jury believe from the evidence that the defendants, or either of them, had contracted with Swape & Youngblood, or either of them, to furnish them goods in payment of an antecedent debt, due by Youngblood to the defendants, or either of them, and that the defendants received the goods for the purchase price, of which this action is brought, through the said Swape & Youngblood, without full knowledge of the fact that they had been purchased on their credit, and that plaintiffs looked to them for payment, the subsequent use of the goods by the defendants did not amount to a ratification of the purchase of the goods on their account."

This instruction was doubtless refused because it was not warranted by the evidence.

There was no evidence conducing to prove that the goods were received by the appellants through Swape & Youngblood, or in payment of antecedent debts. Swape purchased the goods in the names and upon the credit of appellants, and they were shipped to them by appellees, and received by them. There was proof that Youngblood was indebted to Walker, and, after the goods were received, Walker delivered up to him one of his notes on his agreement to pay appellees for the goods, but there was no proof that appellees were privy or assented to this arrangement between Walker and Youngblood.

The third instruction asked for appellants, and refused by

the court, was as follows : " 3. If the jury find for the defendants in this cause that neither of the defendants in person, or through an authorized agent, purchased the goods of the plaintiffs, and that within a reasonable time after the defendants were informed that the plaintiffs looked to them for payment, they disowned the authority of the party who purchased the goods on their credit, the subsequent use of the goods by the defendants did not amount to a ratification of a purchase of them upon their account." This instruction is neither good law nor good morals.

When the appellants knew that the goods were purchased by Swape in their names and on their credit, it was not enough for them to inform the appellees that they disowned his authority, but they should, as above indicated, have offered to restore the goods; but failing in this, and using the goods, they were legally and morally bound to pay for them.

The fifth instruction asked for appellants, and refused by the court, is as follows : " 5. To be binding on the principal, a ratification of the unauthorized acts of an agent, one pretending to act as agent, who is not such in fact, the ratification must be deliberately made, with a full knowledge of all the material facts and circumstances."

Judge Story, in his work on agency, sec. 239, treating of the ratification by principals of unauthorized acts of agents, uses this language : " Where the principal, upon a full knowledge of all the circumstances of the case, deliberately ratifies the acts, doings or omissions of his agent, he will be bound thereby as fully to all intents and purposes, as if he had originally given him direct authority in the premises, to the extent which such acts, doings or omissions reach." And in *Lyon v. Tams & Co.*, 6 Eng., 205, Mr. Justice Scott said : " The authorities all agree, that although ratification may be implied as well as express, nevertheless, there can be no ratification binding upon the principal, which was not made with a full

knowledge of all the material circumstances of the case. Hence the rule that implied ratification extends only to such acts of the agent as were known to the agent at the time.' See also *Reyburn v. Graves*, id., 378. Again, Judge Story, treating of implied ratification (Agency, sec. 253), says: " Slight circumstances and small matters will sometimes suffice to raise the presumption of a ratification. * * * * Thus, for example, if an agent who is employed to purchase goods at a limited price, should exceed that limit, and the principal, after full knowledge of the facts, should receive them on his own account, without objection, it would be presumed, that he intended to ratify the transaction. And *a fortiori*, if the principal should not only receive, but should sell them on his own account. The same conclusion would arise under similar circumstances, if the agent had no authority whatsoever to make any purchase." And this was, in substance, what the court below told the jury, in some of the instructions given — that the use of the goods by the appellants, after knowledge that they had been purchased in their names, and on their credit, was an implied ratification of the purchase, etc.

There was no proof in this case that appellants had expressly ratified the act of Swape in purchasing the goods in their names, etc., either deliberately or hastily, and we suppose the court below refused this instruction because it seemed to imply that there must be an express, deliberate ratification, etc. It did not follow that because it was drawn very much in the language used by Judge Story, that it was applicable to this case.

We think upon the whole record of the case, that the court below did not err in overruling the motion for a new trial, and the judgment must be affirmed.

STEPHENSON, J., being disqualified, did not sit in this case.