ATLANTA NATIONAL BUILDING & LOAN ASSOCIATION
*v.* BOLLINGER.

Opinion delivered November 14, 1896.

ESTOPPEL—AGENT'S CONTRACT.—The agent of a building and loan association, in his individual capacity, covenanted with one applying for a loan that, in case the loan was not made within ninety days after application, he would return his initiation fees and all monthly dues that he might have paid. This agreement was communicated to the association by the applicant, with an inquiry as to when he could get the loan. The association replied to his inquiry, without referring to the agreement with the agent. The applicant knew that the agent had no authority to bind the association by such agreement. *Held* that the association was not estopped to deny its liability under such agreement.

Appeal from Sebastian Circuit Court, Fort Smith District.

EDGAR E. BRYANT, Judge.

*Winchester & Martin* for appellant.

If the company can be held at all, it must be because, with a knowledge of this contract, it ratified and confirmed it. Mechem, Agency, sec. 546, and cases cited. There is no evidence of this. To work an estoppel, there must be knowledge and conduct. Bigelow, Estoppel, 546, 547, 552, 588, 589, *et seq.* Ratification can be

predicated only upon knowledge, or upon intentional and deliberate ignorance. 55 Ark. 242; *ib.* 426–7; *ib.* 631, 632; 29 *id.* 530. In this case the contract sued on was made after the sale of the stock, and the sale of stock was the only business the agent was authorized to transact.

*Joseph M. Hill* and *Preston C. West* for appellee.

WOOD, J. This appeal is to reverse a judgment for $220.00, recovered on the following contract: "Fort Smith, Ark., December 6, 1893. R. C. Bollinger, of Fort Smith, Ark., having subscribed for and received from Atlanta National Building & Loan Association, of Atlanta, Ga., seventy shares of stock, being taken for securing a loan of seven thousand dollars: Now, I, undersigned, as special agent for said association, and in my individual capacity, hereby agree and covenant to return to said R. C. Bollinger his initiation fee and all monthly dues that he may have paid, provided that he does not secure said loan within ninety days after the time his application for such loan was received at the home office of the association, said application having been acknowledged received by the association, November 17, 1893, the said R. C. Bollinger covenanting to pay his monthly dues promptly to the above mentioned time, and any failure to do so will render this argument null and void. (Signed) W. B. Hammond, R. C. Bollinger.

The answer, *inter alia*, denies the contract, and the authority of the agent to make it. The court instructed the jury that the contract was "not binding on the defendant association, unless it had by its action estopped itself to deny its binding effect on it." This was correct, for the undisputed evidence shows that the agent had no authority to bind the association by such a contract. What is the proof of estoppel? Appellee contends that appellant, "with full knowledge of the

contract, ratified it by silence, after being called upon to respond to its force." The proof shows that on November 25, 1893, appellee wrote to the secretary of appellant as follows: "Dear Sir: I was very much surprised on receiving your papers stating that I would have monthly dues to pay before the loan of $7,000 was made, for which I applied. Mr. Hammond told me that if you accepted the loan, I could get the money right away; that there would be no delay; that if you did not accept the loan, then the eighty dollars which I paid him would be returned. Now, I will tell you my circumstances, which I explained to Mr. W. B. Hammond. We have $7,000 borrowed on the property from M. Joel, and it is now due, and he insists on having the money, and threatens to foreclose. Now, Mr. Hammond says that you have already accepted the loan, but the papers you sent me don't show it, and don't say so. Let me know at once how soon I can accept the money, as I must know something definite at once. Yours truly, R. C. Bollinger." And received the following reply: "Atlanta, Ga., November 28, 1893. Mr. R. C. Bollinger, Fort Smith, Arkansas. Dear Sir: Yours of 25th inst. received, and I am somewhat surprised at its contents. You state that Mr. Hammond told you that you could get the money right away, and further that you should not be required to pay dues until you did get it, etc. I cannot understand why Mr. Hammond should make such a statement, for the fact is that loans by the association are only made in the regular way, as indicated in the plans and by-laws herewith. And I refer you especially, in reference thereto, to pages 9, 10 and 11. All applications for loans are treated as therein indicated. Please read the literature carefully, as we strictly comply therewith. Yours truly, J. W. Goldsmith, Secretary."

And again in December appellee wrote as follows: "Mr. J. W. Goldsmith, Secretary Atlanta National

Building & Loan Association—Dear Sir: I would not object to paying monthly assessments, if I could be assured by you of getting the loan in the sixty or ninety days from date of my application, No. 3031, even if Mr. Hammond did promise me that I would know right away. It was also expressly understood that if I did not secure the loan my money would be refunded at once. The money on loan wanted is needed to pay off a mortgage of $7,000 now due on the property, as I had explained to Mr. Hammond. Please give me some satisfaction, as near as you can, on the above questions. Can I get the loan in sixty or ninety days from date of application? And how long will it take before I will know if I can get the loan or not? And if I cannot get the loan, will I get my money back right away that I paid in? Awaiting an early reply, Yours truly, R. C. Bollinger." And received the following reply: "Dear Sir: The board reserve to themselves the exclusive right to pass on each application for a loan, which they do as per plans and by-laws, pages 9, 10 and 11 herewith. No one can act and bind them further than therein indicated. But if they are satisfied with the security offered, they make the loan as per the book in its turn, and it requires just now four to five months from date of filing such application, on account of money famine reducing receipts and also increasing applications. Yours truly, J. W. Goldsmith, Secretary. December 4, 1893."

The testimony of Goldsmith, the secretary of the appellant company, on this question is as follows: "I never knew anything of any agreement between Hammond and Bollinger until the receipt of Bollinger's letter of November 25, 1893, and from Mr. Hammond's letter of February, 1894, both of which are hereinbefore attached, and from which, as I stated before, and as stated in said letters, I understood the matter to be purely an individual agreement between Hammond and

Bollinger, but I had never heard it expressed or intimated from any source that the dues on Mr. Bollinger's shares which he had paid into the association were expected, under any circumstances, to be paid back, until after this suit was brought. If there had been any condition accompanying the application for the stock, or the application for the loan, or had we had any knowledge of any such alleged agreement, both would have been refused, and promptly returned to Mr. Bollinger." He further testified that "the $80 referred to in Bollinger's letter, as paid by him to Mr. Hammond, which he says Mr. Hammond stated would be returned unless he got the loan right away, was $70.00 for admission fees paid to Hammond, and which belonged to and was retained by him as his commission for taking the shares of stock, and the remaining ten was for attorney's fees with regard to examination of title. I took no note of said matter, because I regarded it as a personal and individual arrangement between Hammond and Bollinger with regard to Hammond's own commission. I regarded it simply as an agreement by Hammond, if such were made, to relinquish his commissions on the stock, in case Bollinger did not obtain the loan."

Appellee contends that appellant is estopped by failing to respond expressly to that part of appellee's letter in which he says: "Hammond told me if you did not accept the loan that the $80.00 which I paid would be returned," and also by failing to answer specifically the question propounded in the letter of December 4th, to-wit: "If you can not get the loan, will I get my money back right away that I paid in?" Certainly, appellant was not estopped to deny liability for the eighty dollars which appellee claims to have paid upon the promise of its agent to refund in·case of failure to make the loan. For the agent was not authorized·to make such promise, and this amount was paid before

any letters were written to appellant concerning it. We fail to comprehend how silence in answering letters that were not written until after the eighty dollars had been paid could have caused the payment of said eighty dollars. That would be impossible. Certain it is, then, that the eighty dollars which appellee had paid before writing the letters were not paid by reason of silence in not answering anything in said letters. And if said silence had not in any manner influenced appellee to part with said eighty dollars, how is appellant estopped to deny his right to recover for it? But we think the letters of appellant were sufficent to show appellee that appellant's agent had no authority to bind it by any contract he might make to refund fees in case of failure to make loan, not only the fees that had already been paid, but any that might thereafter be paid. These letters advised appellee specifically that their agent had no authority to make any promises pertaining to loans except such as were authorized by their prospectus, etc. Appellee, the evidence shows, also was well aware of this fact before. Yet, despite that knowledge, he enters into a written contract with appellant's agent, unauthorized by appellant, whereby he agrees to promptly pay his dues, etc., to a certain time, upon condition that if a loan is not made the dues shall be refunded. Appellee's contract with appellant's agent was not superinduced by any conduct whatever of appellant, and appellant is not estopped.

As to ratification, it cannot be seriously contended, that a contract could be ratified before it was made. There is no evidence to support the verdict. Reversed and dismissed.