[No. 1229.]

## MOFFITT-WEST DRUG CO. V. LYNEMAN.

1. PRINCIPAL AND AGENT.

Where a drug business was conducted by a husband in the name of his wife and on capital furnished by her, he acting as general manager of the business, buying and selling goods, she is liable for goods purchased by him and placed in the stock and sold, whether she had knowledge of the purchase or not, and although she had told the salesman of the company selling the goods that her agent must no longer buy goods of his company.

2. SAME.

Where goods are purchased by an agent, the principal cannot appropriate and dispose of part of the goods and then refuse to pay for them on the ground that her agent was not authorized to purchase the goods for her. A principal cannot ratify part of a transaction and refuse to be bound as to the rest of it. The whole of the contract or none of it must be adopted.

3. SAME.

A principal may not through an agent receive goods, dispose of them for his own benefit, pocket the proceeds and refuse to pay for them on the ground that the agent had no authority to buy the goods.

4. PRACTICE.

In a suit by attachment a verdict was returned for defendant. Part of plaintiff's cause of action was admitted. It was error for the court to enter judgment for defendant upon payment into court by defendant of the amount admitted. If the plaintiff was entitled to recover any part of the claim he was entitled to a judgment for that amount in order to protect himself from liability on the attachment bond.

*Appeal from the District Court of Arapahoe County.*

Mr. THOS. B. STUART and Mr. CHAS. A. MURRAY, for appellant.

Mr. R. D. THOMPSON, for appellee.

BISSELL, J., delivered the opinion of the court.

We cannot discover any evidence in the record by which this judgment can be supported, nor any principle of law

on which, accepting the defendant's statement as true, it may be maintained.

In 1893, and for a long time before, Mrs. Lyneman had been carrying on a drug business in the city of Denver, under the name of the Lyneman Pharmacy. This business was carried on by her husband as general manager and agent. He conducted the business according to his own judgment and discretion on capital which Mrs. Lyneman supplied. He bought all the stock and material which was used in and about the business, contracted all debts, and usually settled all claims. The pharmacy did business with the Moffitt-West Drug Company of St. Louis, and bought from them at sundry and divers times goods which were put in the store and afterwards disposed of in the general course of the business. Between the 11th of November, 1893, and the 12th of June, 1894, the pharmacy bought of the drug company various items of drugs, merchandise and whiskey, which were placed in the general stock, and some of it sold prior to the death of Mr. Lyneman in the summer of 1893. After his death, Mrs. Lyneman took charge of the store, and found there the barrel of whiskey which had been bought of the drug company. She sold it and appropriated its proceeds. There is some question about the knowledge which Mrs. Lyneman had of the purchase of the other goods, and as to the extent of her personal information respecting the sale of them. We do not regard this question as a very material circumstance, but it is stated because so much stress was put on it at the trial by the learned judge before whom the cause was tried, and who gave some instructions about it which were not justified by the testimony. The goods were sold to the manager by a traveling salesman representing the company, who took the order and transmitted it to St. Louis, where it was filled by the house. It is on this circumstance that the defense principally turned. Mrs. Lyneman insisted that prior to this time she had notified the salesman not to sell any goods to her husband, and that she would not be responsible for any debts which he might contract. That she de-

sired the goods should be purchased in Denver, where she could better overlook the accounts and control the conduct of her agent, whose honesty and integrity she very bitterly attacked in a somewhat extraordinary fashion when we remember that her husband was dead when she testified. Mrs. Lyneman admitted that she had appropriated the whiskey, though she refused to pay any part of the bill. While she did not admit that she knew the other goods were purchased and put into the general stock, she did not specifically deny having this information. The complaint stated a cause of action for goods sold and delivered. The answer denied none of its allegations except those which averred the incorporation of the plaintiff company. The defendant did deny that she was indebted in the sum named, or in any other. This was not a denial of the sale and delivery of the goods. *Gale v. James*, 11 Colo. 540.

After the plaintiff had put in its testimony and rested, the defense put Mrs. Lyneman on as a witness to controvert the sale. The plaintiff promptly objected because the answer tendered no issue on this point. The court so ruled, and the defendant then asked leave to amend the answer. This was granted, the cause proceeded, and was submitted to the jury.

The plaintiff then filed a motion to set aside the verdict on various grounds, among which was one which insisted the verdict might not stand because it appeared from the evidence that the defendant had sold the whiskey and appropriated the proceeds, and as to this item at least the plaintiff was entitled to judgment. This was strenuously insisted on because the plaintiff had sued out an attachment in aid of the suit, and of course would be liable on the bond for damages if it failed to obtain judgment. The court refused to set aside the judgment, but imposed as a condition that the defendant should pay into court for the use of the plaintiff, the price of the whiskey. The company refused to accept it, and the court entered final judgment on the verdict for the defendant, and thereupon this appeal was prosecuted.

The appellant seems somewhat inclined to waive the point that the verdict was totally unsupported by the testimony, and seems to prefer to rest the appeal on the ground that the defendant was liable as a matter of law because of sundry matters of fact which were practically conceded by the parties. While the appellant might perhaps very safely pursue this course we are so decidedly of the opinion that the judgment is entirely unsupported by the testimony that we shall put the reversal partly on that consideration. The defendant introduced no testimony to show that any knowledge was brought home to the drug company of any limitation on the authority of the general agent to buy, and the court properly instructed the jury that unless they found such knowledge was brought home to the company, the sale and delivery of the goods and their ultimate disposition by the defendant's agent would bind her because of his general authority. We quite agree with the learned court on this question because even though it be conceded she told the salesman that her general agent must no longer buy goods of the company, yet the subsequent purchase, coupled with the fact that the goods went into the stock and therefore presumably to the knowledge of the principal, must under these circumstances bind her. It might well be assumed that after the goods had been delivered and mingled with the stock and partially sold, the limitation on the authority of the agent was withdrawn. We do not attach very much importance, however, to this consideration because there are other principles which so completely control the case that the decision can be very safely rested on another basis. As has already been stated, the goods were received and placed in stock and partially sold by the agent and the proceeds went to the benefit of the principal. After the death of the manager, the defendant appropriated a portion of the goods and when the price was demanded refused to pay, and defended on the sole ground that her agent had no authority to make the purchase. There are many reasons why this contention is without force. Whether or not the knowledge

of the agent is the knowledge of the principal under circum-, stances of this sort, it remains true that when the principal appropriated part of the goods and sold them, this must be taken as a ratification of the whole transaction. It is a well settled rule that a principal cannot ratify part of a transaction which is for his benefit, and refuse to be bound as to the rest of it. The acceptance of part of the agreement will bind the principal as to its entirety.. The principal must, adopt the whole of the contract or none of it. Accepting part, the obligation to respond for the whole is a necessary legal result. Story on Agency, sec. 250 ;. *Pike et al. v. Douglass & Co.*, 28 Ark. 59 ; *Eadie et al. v. Ashbaugh*, 44 Ia. 519 ; *Maddux v. Bevan*, 39 Md. 485 ; *Bacon v. Johnson*, 56 Mich.. 182 ; *Deering Co. v. Grundy County Bank*, 81 Ia. 222 ; *Sartwell v. Frost*, 122 Mass. 184.

But back of all this, and a possibly more indisputable proposition, is that whether the principal had or had not knowledge of what the agent did, and whether there may or may not have been a limitation on the agent's authority, the principal may not either personally ·or through an agent, receive goods, dispose of them for his own benefit, pocket the proceeds and refuse to pay. There is no principle either in, law or in morals which will permit a principal to repudiate the act of his agent and keep the fruits of the act in his pocket. This is precisely what the defendant tried to do. She insists that her agent had no authority. If we concede it there was still ample proof that the goods were sold and delivered by the company to the pharmacy, went into the store and were appropriated by either the agent or the principal for the principal's benefit. The transaction would not savor of common honesty and the defendant cannot be permitted to retain the goods and refuse to pay for them. Of course we are not prepared to deny the right of the defendant on the· discovery of what her agent had done in violation of his authority to repudiate the contract, return the goods, and refuse to pay for them. But, notwithstanding this con-- cession the company must be put in *statu quo* as to its goods,

or must be entitled to collect their value. The defendant concedes that she appropriated part of the goods and she must therefore be held liable to respond for the entire bill, and she would in any event be liable when the goods were used for her benefit and she kept the proceeds and did not return them. This must be so whether she did or did not have knowledge of the purchase. *McDowell v. McKenzie*, 65 Ga. 630; *Culver v. Ashley*, 19 Pick. 300; *Ketchum v. Verdell*, 42 Ga. 534; *Jewell Nursery Co. v. State*, 59 N. W. Rep. 1025; *Palmer & Sons v. Cheney*, 55 Ia. 281.

We are also of the opinion that the court erred in refusing to set aside the verdict of the jury. We do not think it consistent with the rights of the parties to refuse to set aside a verdict when part of the plaintiff's cause of action is admitted and permit the defendant to pay the amount of it into court and have judgment on a wrong verdict. The suit was begun by attachment and if the plaintiff was entitled to recover any part of its claim it was entitled to judgment for that amount in order to protect itself from any liability on the bond. It might possibly be true under some circumstances that the court could deny this but it could only be done on condition that the defendant enter a retraxit on the bond and thereby save the plaintiff company harmless. Either one or the other of the two courses should have been adopted. It is quite possible that this court might affirm the judgment on the condition that the defendant file herein such retraxit, but since the judgment must be reversed because it is entirely unsupported we enter no such order.

The appellant complains of what the court did with respect to the amendment. Since no harm can now come to the plaintiff because of it, and it is perfectly advised as to the issue and can be prepared to meet it on a subsequent trial without surprise or detriment, we are inclined to let the pleading as amended stand and the case be retried on the issues formed by the amended answer. We do not however desire to be understood as commending the practice or as establishing a precedent which will sustain an order made under these circumstances.

Very considerable argument is made on some instructions claimed to be erroneous, but this opinion so clearly indicates the lines on which the case must be tried that the court can avoid any errors in this respect on the subsequent trial.

This covers the whole case as we view it, and believing as we do that the court erred in its procedure, we must for the reasons suggested, reverse the cause and remand it for a new trial, which is accordingly done.

*Reversed.*