[No. 1877.]

Schollay, nee Lyneman, v. Moffitt-West Drug Company.

1.  Appellate Practice—Instructions—Exceptions.

If instructions to a jury embrace distinct legal propositions, and any one of the propositions is sound, such instructions can not be reviewed by the appellate court upon a general exception to the charge, but if the charge is wholly bad or embraces but

a single legal proposition, a general exception is sufficient, and special exceptions are unnecessary.

2. **Principal and Agent—Notice.**

Notice received by an agent affecting the business he is authorized to transact while he is engaged in its transaction is notice to his principal.

3. **Principal and Agent—Ratification.**

Knowledge of all the material facts is essential to the ratification by a principal of the unauthorized acts of an agent.

4. **Same—Purchase and Sale of Goods by Agent.**

Where defendant, a married woman who owned a drugstore conducted by her husband as her manager, in person notified plaintiff, a wholesale drug company, through its traveling salesman, that she would not purchase any goods from plaintiff, and afterwards the same salesman sold and delivered to her husband as her manager certain bills of goods, if defendant had no knowledge of the purchase of the goods by her husband, nor of the delivery thereof at the drugstore, nor of the sale thereof and receipt of the proceeds for her by her employees, there could be no ratification by her, and without a ratification there was no sale to her, and an action against her upon a contract for goods sold and delivered must fail.

5. **Principal and Agent—Sales—Ratification—Instructions.**

In an action for goods sold to defendant's unauthorized agent in several different bills evidenced by orders made at different times by the agent, an instruction that an appropriation by defendant of any portion of the articles purchased would render defendant liable for the whole, was erroneous. An appropriation of the goods or a portion of the goods purchased under one order or contract would not be a ratification of a purchase under an entirely separate and different contract.

6. **Principal and Agent—Sales—Authority of Agent—Ratification.**

In order to recover for goods sold to defendant's agent after defendant had notified plaintiff that she would buy no goods from it, it must be shown either that the goods were purchased by defendant's authority or that she ratified the purchase with full knowledge of the facts.

*Appeal from the District Court of Arapahoe County.*

Mr. R. D. THOMPSON, for appellant.

Mr. THOMAS B. STUART and Mr. CHARLES A. MURRAY, for appellee.

Thomson, J.

The Moffitt-West Drug Company brought this action against E. Pauline Lyneman to recover the price of goods, wares and merchandise, alleged to have been sold and delivered by it to her. The answer was a denial. Judgment went in favor of the defendant, and the plaintiff appealed to this court, where the judgment was reversed.—*Moffitt-West Drug Co. v. Lyneman,* 10 Colo. App. 249.

The trial which followed the reversal, resulted in a judgment for the plaintiff, and the case is now here by the defendant's appeal.

Upon some matters of controlling importance, the evidence was conflicting; and if the case was properly submitted to the jury, we are powerless to disturb their verdict.

It appears that the defendant was the proprietor of a drug store, known as Lyneman's Pharmacy, which was managed by her husband, F. A. Lyneman, as her agent. Her testimony was that on a day in July, 1893, happening to go to her store, she found in the room Mr. John J. Smythe, the traveling sales-man of the plaintiff, endeavoring to obtain an order from her husband for a bill of goods; that she then and there told him that she wanted him to keep out of the store; that she did not want her husband to buy any goods east, because she could not keep track of the purchases; that she wanted her goods bought in Denver, from two houses which she named, for the reason that she knew just what goods were needed, and what should be bought; and if her husband bought at those houses she could keep herself advised of his movements. It appears from her statements that she had very little confidence in her husband's business capacity, and disliked his methods; and hence her anxiety to be able to follow his transactions. The goods, for the price of which this action

was brought, were all sold to the pharmacy after the defendant, according to her testimony, notified Mr. Smythe that she wanted no goods from his house. She also stated that she had no knowledge that any goods from that house had come into her store; and we find no tangible evidence in the record that she ever knew anything whatever about any of such goods, except it might be one barrel of whiskey. Concerning that, she denied knowledge that it came from the plaintiff, but her denial was contradicted. Mr. Lyneman died on the 19th day of June, 1894, and the defendant, after the first trial, became Mrs. E. Pauline Schollay. The evidence on the subject is unsatisfactory, but it may be conceded that with the exception of the whiskey, all the goods received from the plaintiff were placed upon the shelves in the storeroom, and, in due course of business, were sold with the other goods. The defendant's statement of the conversation with Mr. Smythe, was contradicted by him.

Upon the evidence, the court instructed the jury orally, as follows:

"If you believe from the evidence that the plaintiff sold and delivered to the Lyneman Pharmacy, and you find that the defendant was the principal and owner of the business carried on and conducted in the name of the Lyneman Pharmacy, and that the defendant was doing business in such name, and you find that the merchandise was delivered at the premises, and in the store of the defendant, and that the defendant personally, or through her agent, received such goods and disposed of them for her own benefit, and appropriated the proceeds thereof to her own use, then the defendant is liable in this action, and you should return a verdict in favor of the plaintiff for the value of the goods so sold, so delivered and so received, and so appropriated by the defendant.

And under such facts the plaintiff would be entitled to recover, whether the defendant had or had not knowledge of what the agent did, and whether there may or may not have been a limitation on the agent's authority.

"In order to justify you in finding for the plaintiff, you must find from a preponderance of the evidence, that the goods and merchandise in question were sold and delivered to the Lyneman Pharmacy. And if you find from the evidence that a certain bill of merchandise and goods was in the manner as we have described, sold and delivered to the said pharmacy, and that the defendant was the owner of the business, and carrying on her business in that name, and you further find from the evidence that the defendant personally, or through her agent, disposed of any part of the said bill of goods and merchandise, and appropriated the proceeds thereof to her own use, and you find from the evidence, under these instructions, that the defendant is liable for such portion of the bill of goods, then and in that case the defendant would be liable for the entire bill of goods to the extent of the items and amount of the entire bill of goods which were sold and received at her place of business, provided you find that such entire bill of goods was sold and received by the defendant, either personally or through her agent, and that the same were placed in the store and mingled with the goods and merchandise of the premises and store of which the defendant was the principal and owner, and you find that such goods were sold and disposed of by either the defendant personally, or her agent, and the proceeds thereof went into the funds of the defendant, and were retained by her.

"If you find from the evidence that the plaintiff did not sell the merchandise in question to the Lyneman Pharmacy, and deliver the same to the Lyne-

man Pharmacy, and that the same, nor any part thereof were appropirated, and the proceeds thereof not appropriated by the defendant, personally, or through her agent, and that the proceeds thereof did not go into and become mingled with the funds of the defendant, and that the defendant did not retain the same, then and in that case, you should find for the defendant, with reference to the entire bill of goods.

"In determining these questions, you should take into consideration all of the evidence that has been offered in the case, and from and upon that evidence return your verdict.

"It has been contended on the part of the defendant, that the defendant instructed one Smythe, who it is said was a salesman for the plaintiff company, upon a certain occasion, in the defendant's store, that her husband, Lyneman, was forbidden to purchase goods from any house other than two certain houses named, in the city of Denver, inclusive of the house which Smythe represented. And it i contended that she told Smythe that she would not permit Mr. Lyneman to purchase any goods at his house, and evidence has been offered in reference to such contention. If you find that the defendant did, on that occasion, notify the salesman, and you find that salesman to be the person who subsequently sold the goods to the agent of the defendant, and you find that the goods in question were sold to such agent, Lyneman, the husband, and were not sold to the Lyneman Pharmacy, of which the defendant was owner or principal, and you find that the defendant, either personally or through her agent, did not receive the said bill of goods, or any part thereof, and did not mingle them with the other goods in her store, and did not, through herself personally, or through her agent, appropriate the same, or any part thereof, by selling and disposing of them, and by appropriating the

proceeds thereof to her own use, then and in that case the defendant would not be liable for any part of the bill of goods alleged to have been sold to the Lyneman Pharmacy, the defendant in this case.

"The law is, that though the defendant may have limited the power and authority of her agent in purchasing goods, though she may have notified the plaintiffs in this case, through their agent Smythe, of such limitation, if she subsequently ratified the act of Lyneman, her husband, in purchasing the bill of goods in whole or in part, she would then become liable for the bill of goods in question. And after having limited the power and authority of her agent, by notice to the plaintiff, through its agent Smythe, if such he was, if Lyneman subsequently purchased the bill of goods (I mean Lyneman, the husband), and placed them in her store, and she appropriated the goods, or any part thereof, either personally or through her agent, by mingling them with her goods, and selling the same, and appropriating and retaining the proceeds thereof, such would be in law, a ratification of the acts of her agent, even though he had theretofore been limited in his power or authority to bind the principal, the defendant.

"And the law is that a person cannot ratify a part of a contract, without becoming liable for the entire contract, and under these instructions, you will determine from the evidence under the law whether the plaintiff is entitled to a verdict in this case, and if so, determine the amount that the plaintiff is entitled to recover, and by the same rule, determine whether or not the defendant is entitled to a verdict."

The court refused a number of instructions requested by the defendant; but because they were not prepared or presented in accordance with the requirement of the law, the court was authorized to reject them, and its action in that regard cannot be

reviewed by us. The oral charge was met by one general exception on the part of the defendant, and it is urged upon us that this was insufficient. If the charge embraced distinct legal propositions, and any one of the propositions was sound, the general excep-tion was useless.—*Webber v. Emmerson,* 3 Colo. 248; *Railway Co. v. Ward,* 4 Colo. 30: *Keith v. Wells,* 14 Colo. 321.

Conversely, if the charge was wholly bad, or em-braced but a single proposition, special exceptions were unnecessary. We think a critical examination of the charge will disclose, in the multitude of words which compose it, but one legal proposition. That proposition is that the sale of the goods to the de-fendant's agent, and the appropriation by the de-fendant of their proceeds, in whole or in part, would render her liable for the plaintiff's full claim. The proposition appears in different language, in dif-ferent parts of the charge, and is stated in both af-firmative and negative form; but whatever the lan-guage, and whatever the form, a close examination resolves it into the same proposition. To this one proposition but one exception was necessary.

A discussion of the instruction necessitates a consideration of the evidence. Mr. Lyneman was the general manager of the defendant's store, and, as such, had authority to do whatever she might herself do in the transaction of her business, subject, neces-sarily, however, to instructions from her. She testi-fied that she determined to buy no more goods from the plaintiff, she so informed Mr. Smythe, the plain-tiff's traveling agent, in July, 1893, in the presence of her husband, while the former was soliciting an order from the latter for a bill of goods. The sales which resulted in this suit, were all made after that time; and there was no evidence that her deter-mination was ever changed. Her statement was de-

nied, and the question whether she gave the notice to which she testified, was one of the controlling questions in the case. But the trial judge seems to have been of a different opinion; and, furthermore, as we infer, was in some doubt as to whether the notice to Mr. Smythe bound the plaintiff. But Mr. Smythe was the agent of the plaintiff for the sale of its goods. His acts, in connection with the subject-matter of his agency, were binding on his principal; and any notice received by him, affecting the business he was authorized to transact while he was engaged in its transaction, was notice to his principal.—*Flower v. Elwood,* 66 Ill. 438; *Reynolds v. Engersoll,* 11 Smedes & M. 249; *Smith v. Commissioners,* 38 Conn. 208; *Slater v. Irwin,* 38 Iowa 261; *Hart v. Bank,* 33 Vt. 252; *Dresser v. Norwood,* 17 C. B. N. S. 466; Story on Agency, § 140; Mechem on Agency, § 718.

On the hypothesis of the truth of the defendant's testimony, notice was given by her to Mr. Smythe that she would not purchase goods from the house he represented; and it was given at the very time he was endeavoring to make a sale to her husband. In some of the cases to which we have referred, it is held that the principal is chargeable with knowledge acquired by the agent in another transaction, or even before the existence of his agency, unless from lapse of time, or other circumstances, it may be presumed that the knowledge is no longer present to his mind. And such is the doctrine of the supreme court of the United States.—*The Distilled Spirits,* 11 Wall. 356.

But the notice to this agent was given, if it was given at all, while he was engaged in the very business of his principal which the notice affected; and by all the authorities, his principal was bound by the notice. We cannot forbear remarking a feature of the case, by which the general principle is emphasized. The same agent who received the no-

tice, acting for the same principal, made the sales.

In order to reach a correct result it was neces-sary that the question whether the defendant had knowledge that the plaintiff's goods went into her stock should be determined. The theory of the in-struction is that if the goods were delivered into the pharmacy, and were sold by the employees of the de-fendant, and the proceeds put into her possession, there was a ratification of the purchase by her, and her liability was the same as if she had herself ordered the goods. It may be admitted that the goods were delivered into the pharmacy; that they were sold by the employees of the defendant, and that the pro-ceeds were put into her possession. But those facts alone do not constitute ratification. If the plaintiff was notified through its agent that she wanted none of its goods, then something more than the facts sup-posed by the instruction, was necessary to fasten a liability upon her for goods sold and delivered. If she had no knowledge of the purchase of the goods by her manager, or their delivery into the pharmacy, or the sales by her employees, or the receipt of their pro-ceeds for her, there could be no ratification. A knowl-edge of all the material facts is essential to the rati-fication by a principal of the unauthorized act of his agent.—Wharton on Agency, § 65; Story on Agency, § 243; Mechem on Agency, § 249.

If her agent had no authority to make the pur-chase, and the plaintiff was so advised, a ratification by her was necessary to validate the unauthorized acts; without such ratification there was no sale to her, and an action against her upon a contract for goods sold and delivered, must fail. There is no such thing as making one a purchaser without his consent. Where there is no meeting of minds, there is no contract. It may be that because the defendant received the money for which her employees sold the

goods, she would be liable to the plaintiff in an action of some kind for its recovery. But if, against her prohibition, the plaintiff surreptitiously, by connivance with her agent, put goods into her store which it knew she did not want, expecting to make her a purchaser against her will, and she received the proceeds in ignorance of the facts, we are not sure a recovery against her upon any theory, would be necessary to satisfy the requirements of justice. Certainly, however, there could be no recovery upon a contract for goods sold and delivered.

At the trial the first question to be determined was whether the defendant prohibited the plaintiff, through its agent, from selling goods to her manager. If that question should be resolved against her, it would only be necessary to find the amount of her liability and render judgment accordingly. But if that question should be decided in her favor, then, until a determination of the question what, if any, knowledge she had of the receipt and disposition of the goods, no other step could be taken. The theory of the instruction was that those questions were not in the case.

Furthermore, the instruction assumed that the purchases of the goods in question constituted but one transaction, and accordingly announced that an appropriation by the defendant of any portion of the articles purchased would render her liable for the whole. The assumption was contrary to the fact. The purchases did not constitute one transaction. There was a number of separate contracts, without connection with each other, evidenced by orders made at different times by F. A. Lyneman. The barrel of whiskey was the subject of a contract distinct from, and entirely independent of, the others. It was the last purchase made. There was evidence from which the jury, if properly instructed, might have found

that the defendant disposed of the whiskey with knowledge that it had been furnished by the plaintiff. Upon such finding judgment might properly have gone against her for the purchase price of that whiskey, but her status in respect to the other articles would have been unaffected. Still, in order to charge her with the whiskey, as having been sold and delivered to her, it must be shown either that it was bought by her authority, or that she ratified its purchase with full knowledge of the facts. The instruction was totally and irretrievably vicious.

A recent case in the supreme court of the United States, in its facts, bears a very striking resemblance to the case at bar; and the controlling principle of each of the cases is the same. Mr. Justice Brewer delivered the opinion of the court, saying:

"On the general merits of the case, it may be observed that the action is on a contract for goods purchased by defendants. If no such contract of purchase was in fact made, the verdict was right; and this, although goods of the plaintiffs were surreptitiously put into the possession of defendants, and the proceeds of sales made thereof by their employees passed into their hands. While from the fact that goods belonging to one party pass into the possession of another a contract of purchase may sometimes be implied, it will not be implied when it appears that such transfer of possession was surreptitious, and without the knowledge of the latter. A party cannot be compelled to buy property which he does not wish to buy; and no trick of the vendor, conspiring with an agent of such party, by which possession is placed in him, creates on his part a contract of purchase. Nor is any contract of purchase created, even if it also appears that, unknown to the party, his agent who had entered into this wrongful combination has sold the property and put the proceeds into

his principal's possession. Whatever liability might exist in an action brought under those circumstances, for money had and received, no action will lie for goods sold and delivered. The party is not responsible under a contract and as a purchaser, whatever may be his liability for the moneys which he has received as the proceeds of the sales."—*Shutz v. Nordon,* 141 U. S. 213.

But, in behalf of the plaintiff, it is insisted that the theory of the instruction was the theory upon which this court reversed the judgment when the case was here before, and the proposition is ably and elaborately supported by counsel. Let us see how far this statement is borne out. In the opinion, which was prepared by Bissell, J., after some observations respecting the barrel of whiskey, the following is said:

"While she (the defendant) did not admit that she knew the other goods were purchased and put into the general stock, she did not specifically deny having this information. * * * Even though it be conceded she told the salesman that her general agent must no longer buy goods of the company, yet the subsequent purchase, coupled with the fact that the goods went into the stock, and therefore, *presumably* to the knowledge of the principal, must, under these circumstances, bind her."

The purport of the foregoing is that in the absence of any evidence on the question of the defendant's knowledge, from the fact of the purchase and the delivery of the goods into the stock, the knowledge of the plaintiff would be presumed, and she would, therefore, be bound by the purchase. At this point the case was disposed of; and nothing further was required in the opinion, except a formal announcement of the judgment.

But the opinion, nevertheless, proceeded further; and it is out of language subsequently used that the

confusion has arisen. The effect of that language is that because the proceeds of the goods passed into the hands of the defendant, she became liable upon the contract of purchase, notwithstanding her ignorance of the fact of the purchase. The questions involved in the case had already been decided; and the observations and expressions which followed were totally unnecessary. They were statements of the views of the framer of the opinion upon a subject which was not considered by the court in making up its judgment, and were therefore only dicta.

At the last trial the defendant introduced evidence tending to show that the goods of the plaintiff were mingled with goods of the defendant, and, together with them, sold, and the proceeds turned over to her, without knowledge on her part that any goods of the plaintiff had come into her store; and because the question of her knowledge, together with the question whether to the knowledge of the plaintiff she had forbidden purchases from it, was not submitted to the jury, the judgment must be reversed.

*Reversed.*