## COFFIN v. PLANTERS COTTON COMPANY.

### Opinion delivered June 12, 1916.

1. DEED OF TRUST—TRANSFER OF NOTE—CANCELLATION OF TRUST DEED—EFFECT.—Certain notes were given secured by a deed of trust, and one of them was transferred to plaintiff who was a *bona fide* purchaser thereof, for value before maturity, said note being endorsed to her. *Held*, the action of the original holder of the said notes in cancelling the trust deed, and releasing the lien, did not operate to defeat the lien held by the plaintiff to secure her note.

2. PRINCIPAL AND AGENT—RATIFICATION OF AGENT'S ACT.—Before one can be held to have ratified any unauthorized act of one who assumes to be his agent, the principal must have knowledge of all the material facts upon which said agency is predicated, and ignorance of such facts renders the alleged ratification ineffectual and invalid.

3. PRINCIPAL AND AGENT—UNAUTHORIZED ACT—RATIFICATION.—When the principal has the knowledge as stated above, and remains silent when he should speak, or accepts some benefit which he obtains by virtue of his reputed agent's acts, he cannot thereafter be heard to deny the agency.

4. PRINCIPAL AND AGENT—UNAUTHORIZED ACT—RATIFICATION.—There is no ratification if at the time it becomes known that the agent exceeded his authority, the principal has put it beyond his power to return or restore the benefits received, or if without his fault conditions are such that he cannot be placed in *statu quo*, or repudiate the entire transaction without loss.

5. PRINCIPAL AND AGENT—RATIFICATION OF AGENT'S ACT—CANCELLATION OF TRUST DEED.—Plaintiff held a note secured by a certain trust deed. Plaintiff's agent undertook to release the lien retained in the trust deed, and *held*, plaintiff, by her conduct, ratified the agent's act.

Appeal from Mississippi Chancery Court; *Charles T. Coleman*, Special Chancellor; affirmed.

*Hughes & Hughes*, for appellant.

1. Mrs. Coffin has priority. 105 Ark. 152; 115 *Id.* 366; 27 Cyc. 1294; 1 Jones on Mortg. (6 ed.), § 956a,

814; 57 Kans. 743; 97 Ill. 156; 156 S. W. 483; 59 Fed. 917; 109 Cal. 42; 54 Neb. 262; 145 Mo. 142; 85 Md. 315; 50 Ind. 441; 57 So. 671; 205 N. Y. 105; 162 Mass. 72; 100 Ga. 236 and many others. The great weight of authority is that the holder of a negotiable note under circumstances like these, has priority as against one who assumes to pay off the mortgage debt to the original mortgagee, whether such payment be made by the mortgagor personally or by some one for him, intending to take and actually taking a new mortgage. Cases *supra.* 203 U. S. 296; 39 L. R. A. 75; 97 U. S. 369, etc.

2. The loan company paid the mortgage. 97 Ill. 156; 102 *Id.* 148; 191 *Id.* 174; 183 *Id.* 523.

3. French was not appellant's agent and she never ratified his acts. There can be no ratification without full knowledge of all the material facts, or where it is known the agent exceeds his authority and the principal has put it beyond his power to return or restore the benefits received, or without his fault conditions are such that he cannot be placed in *statu quo,* or repudiate the entire transaction without loss. 2 C. J. 496; 64 Ark. 217; 76 *Id.* 472; *Ib.* 563; 90 *Id.* 104; 105 *Id.* 512; 26 S. W. 381; 2 Corpus Juris., 480, 496; 1 Mechem Agency (2 ed.) § 403.

*Caruthers Ewing,* of Memphis, for appellee.

1. French was the agent of Mrs. Coffin with authority to act for her. If he violated his instructions this violation did not affect the loan company. Mrs. Coffin with full knowledge ratified the substitution of securities. The cases cited by appellant do not sustain her position. Many of them support our contention. 58 Mich. 138; 68 *Id.* 36; 77 N. W. 355; 68 Pa. 985; 71 N. W. 538; 77 Pac. 512; 102 U. S. 545; 107 *Id.* 478; 46 Minn. 156; 13 Oh. St. 419; 15 L. R. A. (N. S.) 1025 and note. The *bona fide* purchase of a legal right, whether of security or otherwise, cuts short prior equities. Cases *supra.*

2. Mrs. Coffin ratified the acts of her agent with notice of facts and circumstances equivalent to knowledge

of all facts reasonable diligence would enable one to discover. 58 Ark. 84; 23 *Id.* 735; 32 *Id.* 251; 16 *Id.* 94, 340; 114 Tenn. 467; 38 S. W. 733, 740; 94 U. S. 432; 101 *Id.* 140; 142 *Id.* 438; 150 *Id.* 96; 151 *Id.* 607; 5 L. R. A. (N. S.) 896; 73 Pac. 360, etc.

3. She had knowledge of *all* the facts. 28 Ark. 59; 54 *Id.* 216; 55 *Id.* 112, 240; 11 L. R. A. 81; 118 N. Y. 563; 64 Ark. 217 and many others.

SMITH, J. A condensation of the allegations of the complaint is contained in appellant's brief, from which we copy the following statement:

"The complaint alleges, in substance, that G. L. Waddell is the owner of a plantation in Mississippi County, Arkansas, known as the Shawnee Village. At the times mentioned he owed a balance of purchase money of about $20,000 on the land. Defendant, Planters Cotton Company, in March, 1911, loaned him approximately $30,000 on the land, taking three $10,000 notes due several months later. The plaintiff, two days thereafter, bought one of said notes from the Planters Company, before maturity, in good faith, without notice of any defense, and paid therefor $10,000 in cash. This indebtedness was renewed in 1912, and three new notes taken by the Planters company, one of which was thereupon indorsed to plaintiff, who also took a separate note for the interest then due her.

"On February 22d, 1913, the defendant Commonwealth Farm Loan Company (herein called the loan company) took a mortgage on the same land to secure a loan of $35,000. Of this sum, $20,000 was applied to liquidate the purchase money lien, which was in front of all the mortgages. The remainder, about $15,000, was paid to Planters Cotton Company, and that company placed of record on the same day a power of attorney to the clerk to satisfy the record of both the mortgages to it, which was done.

"The plaintiff was ignorant of all the proceedings. No part of the note held by her has been paid, nor has

she in any way authorized the release of record of the mortgage securing her note. The Planters Cotton Company is now in the hands of a receiver, and Waddell, the maker of the note, is insolvent.

"There were various other allegations on subordinate features of the controversy, but these were the main facts.

"The prayer is, in effect, for judgment on the note, for sale of the property, and that plaintiff be decreed to have priority in the proceeds except as to the $20,000 paid toward the purchase money."

Certain junior lienors are also parties defendant, but as the decree in the cause finds, and as they themselves concede, that their their liens are inferior to the ones here involved, we make no statement of the issues as to them.

The loan company and the cotton company do not deny the execution of the different deeds of trust and other instruments referred to in the complaint, but they do deny that the deed of trust originally given had been satisfied of record without appellant's consent, but aver that she had authorized this action, and that she had fully ratified the action of the Planters Cotton Company in satisfying the deeds of trust, and that the loan company is an innocent purchaser.

The two principal questions in the case are, first, that of the priority of the mortgages and, second, whether the plaintiff, Mrs. Coffin, ratified the action of the Planters Cotton Company in satisfying the deed of trust securing the note on which this action is based. The principal question of fact which is important to consider in determining these questions is that of the nature and extent of the authority of one C. T. French as appellant's agent. Appellant's husband had been a member of the firm of Dillard & Coffin Company, and during the last years of his life French was employed by that firm and was held in the highest regard by its members. After the death of Mr. Coffin, French severed his connection with that firm and became connected with the Planters Cotton Company in the capacity of general manager.

He continued, however, to be the agent and confidential adviser of Mrs. Coffin, and her confidence in him appears to have been unreserved.

We agree with appellant in her claim of priority. This view conforms to the opinions in the recent cases of *Driver* v. *Lacer,* 124 Ark. 150; *Calhoun* v. *Ainsworth,* 118 Ark. 316, 176 S. W. 316; *Calhoun* v. *Sharkey,* 120 Ark. 616, 180 S. W. 216; *Koen* v. *Miller,* 105 Ark. 152.

(1) The note in question was negotiable and had been properly endorsed and was owned by appellant at the time the deed of trust securing it was cancelled. It was, therefore, the duty of the loan company to know who the owner of the note was, and it could not claim protection through the mere cancellation of the deed of trust by the cotton company, if that company was not the holder of the note at the time that action was taken.

It is earnestly insisted that French was the agent of Mrs. Coffin in causing the deed of trust to be cancelled. But a majority of the court do not accept that view of the evidence. All of us, however, do agree with the learned special chancellor in his finding that Mrs. Coffin ratified the action of French in cancelling the lien of this deed of trust.

(2) We have been favored with very excellent briefs in this case which evince much learning and research on the part of opposing counsel; but the legal principles involved are not difficult and have been settled by the decisions of this court. It is well settled that, before one can be held to have ratified any unauthorized act of one who assumes to be his agent, the principal must have knowledge of all the material facts upon which said agency is predicated, and ignorance of such facts renders the alleged ratification ineffectual and invalid. *Schenck* v. *Griffith,* 74 Ark. 557; *Lyon* v. *Tams & Co.,* 11 Ark. 189; *Martin* v. *Hickman,* 64 Ark. 217; *Niemeyer Lbr. Co.* v. *Moore,* 55 Ark. 240.

(3) But it is equally as well settled that when one has this knowledge and remains silent when he should

speak, or accepts some benefit which he obtains by virtue of his reputed agent's acts, he cannot thereafter be heard to deny the agency. In other words, he will be held to have ratified the unauthorized acts. *Ladenberg* v. *Beal-Doyle Dry Goods Co.,* 83 Ark. 440; *Atlanta National Bldg. & Loan Assn.* v. *Bollinger,* 63 Ark. 212; *Dierks Lbr., etc., Co.* v. *Coffman,* 96 Ark. 505; *Lyon* v. *Tams & Co.,* 11 Ark. 189; *Billingsley* v. *Benefield,* 87 Ark. 128; *Pike* v. *Douglass,* 28 Ark. 59; *Creson* v. *Ward,* 66 Ark. 209; *Kelly* v. *Carter,* 55 Ark. 112.

(4) Appellant quotes and relies upon the rule as stated in 2 C. J. 496, where it is said:

"There is no ratification if, at the time it becomes known that the agent exceeded his authority, the principal has put it beyond his power to return or restore the benefits received, or if without his fault conditions are such that he cannot be placed in *statu quo,* or repudiate the entire transaction without loss."

This statement of the law is, of course, correct, and is in accord with the prior decisions of this court. It becomes necessary, therefore, to determine whether Mrs. Coffin remained silent when she should have spoken, or whether she accepted benefits flowing out of the unauthorized acts of French, or whether the action taken by her was such only as was necessary to obtain the best security possible for her debt after the lien securing it had been cancelled. The evidence shows that French's conduct of Mrs. Coffin's affairs had previously been highly satisfactory and profitable to Mrs. Coffin and that her confidence in his integrity and judgment was unlimited. That she was also the owner of $10,000 of the preferred stock of the cotton company, and neither she nor anyone else questioned the solvency of that company at the time of her purchase of the note. The following endorsement appears on the back of the note in suit, which French testified was made by him at the time of the cancellation of this deed of trust:

"This note renewed by notes attached, due December 15, 1913, also 4 rent notes, $4,800 each, attached, as additional security."

(5)    There was also executed a deed of trust covering the lands in question in Mrs. Coffin's favor which the parties refer to as the third deed of trust. This instrument was given to Waddell to be placed of record but was not recorded until some months later. The four notes mentioned were given to G. L. Waddell by his tenant pursuant to a contract for their execution, but upon a showing made that the notes had been executed for an excessive amount they were surrendered with the understanding that new notes for the correct amount of rent should be substituted. At the time of the acceptance of these rent notes the cotton company was a going concern and would probably have paid Mrs. Coffin her money had she refused to accept them, or, had the payment been refused and the loan company apprised of that fact, that company could have taken proper steps to be subrogated to the right of Waddell's vendor with respect to the money paid this vendor, in discharge of their vendor's lien, which lien was prior both in time and right to either the Planters Cotton Company or Mrs. Coffin, this vendor's lien having been discharged on February 2d, 1913.

It is also shown that upon default being made in the payment of the interest due the loan company, in order to prevent a foreclosure of the deed of trust given that company, Mrs. Coffin surrendered one of the rent notes, the proceeds of which, when collected, were applied to the payment of the interest due the loan company.

This was done in January, 1914, but Mrs. Coffin's attorney testified that at that time he thought the only security held by her consisted of the rent note, a note that had been transferred to her in lieu of her original note endorsed by the cotton company and the deed of trust on the Shawnee Village plantation securing this substituted note, which was inferior to the loan company's deed of trust. It is said, however, that notwithstanding these new securities were taken, no ratification was accom-

plished because Mrs. Coffin did not know the manner in which the cancellation of the deed of trust by the cotton company had been accomplished, and that she did not know that she had the note in her possession, nor did she know that it had not been surrendered. That she assumed, as she had the right to do, that the note had been surrendered, or had been exhibited by the cotton company to the loan company as being in its possession and, therefore, its property. In other words, that the satisfaction of the deed of trust had been accomplished in such a manner as to bind her effectively and to leave her no choice but to take such securities as were taken then available.

We cannot, however, accept this view. Mrs. Coffin had knowledge that French had undertaken to satisfy this deed of trust at a time when, had she repudiated that action, the loan company might have protected itself as above stated. Nor do we agree that her lack of knowledge as to the possession of the note protects her. If she did not possess this knowledge—and it appears that she did not—she yet possessed the means of acquiring all this information. The original note was found in her deposit vault and although she did not actually know it was there, she must be charged with this knowledge. We think, when she became aware of the cancellation of the deed of trust by French, she should immediately have informed herself as to the circumtsances connected with that transaction, and that although she did not do so, she must be charged with the knowledge which the slightest inquiry would have disclosed.

We agree with the learned special chancellor in the following finding which he made "Mrs. Coffin believed that the satisfaction was in behalf of all the owners of the notes, including herself. She was mistaken as to the form, but not as to the substance; for the substance included the representations of two essential facts; first, that the party in whose name the satisfaction was entered was the owner of the entire debt; and, second, that the debt itself had been fully paid. If these representa-

tions had been true, the loan company would have acquired a first lien by its mortgage. If the satisfaction had been in the form supposed by Mrs. Coffin, its legal effect would not have been different from that arising from these representations, if true. It therefore appears that while there may have been a want of knowledge as to the exact form of the satisfaction, all the parties, including Mrs. Coffin, had the same idea of its scope and effect, and all believed that it was a complete satisfaction. If the satisfaction had actually been in form as Mrs. Coffin believed it to be in effect, her ratification of it would have given priority to the mortgage in favor of the loan company.''

But, as we have said, Mrs. Coffin did not acquaint herself with the facts in regard to the manner of the satisfaction of this deed of trust, although the means of information were open to her, but without repudiating the unauthorized act of her agent she accepted, and still retains, other securities delivered to her by French.

We conclude, with the chancellor, therefore, that appellant must be held to have ratified the action of the cotton company in cancelling the deed of trust and the decree will, therefore, be affirmed.