SCHENCK *v.* GRIFFITH,

Opinion delivered March 25, 1905.

1. SALE—RESERVATION OF TITLE—NOTICE.—Where a mare was sold without reservation of title for a consideration to be paid, and was subsequently delivered by the vendor to a special agent of the vendee, who had no authority to change the terms of the contract, with a message that the title was retained by the vendor until the mare was paid for, which message was never delivered, one who purchased in good faith from the vendor without notice of the vendor's claim acquired a good title. (Page 561.)

2. AGENCY—AUTHORITY.—One who deals with a special agent is bound to ascertain the nature and extent of his authority. (Page 561.)

3. APPEAL—QUESTION NOT RAISED BELOW will not be considered an appeal. (Page 562.)

Appeal from Fulton Circuit Court.

THOMAS I. HERRN, Special Judge.

Affirmed.

Schenck sued Griffith in replevin for a mare. Defendant answered that he was the owner of the mare by purchase from one Ike Davis; that he was an innocent purchaser without notice of plaintiff's rights.

Plaintiff testified that he was owner of the mare; that he made a contract with Ike Davis to sell him the mare for some work; that nothing was said at the time about retaining the title of the mare until the work was done. A short time afterward Davis came and asked for the mare. Plaintiff told him that his children had the mare away from home, and that when they returned he could have her. "A few days after my children came home Davis sent his boy, who was about 14 years old, after the mare. I went to the barn, and brought the mare to the drug store, and, after hitching her, I went into the drug store, and then I called John Davis and George Ragsdale, and, in the presence of Ike Davis' boy and these two men, I said that Ike Davis was to make boards, and cover my barn, and make me 500 rails for this mare, and that the mare was to be mine until the work was completed. I told the boy to tell his father that the mare was not his until the work was done. I then let the boy have the mare. They all heard what I said." Plaintiff testified that the work which Davis agreed to do for the mare was never done.

Ike Davis testified: "I am acquainted with the plaintiff, J. A. Schenck. About the 1st of August, 1900, I made a trade with him at Hardy for the mare in controversy. I was to cover a barn and make 500 rails for the mare. The mare was there at the time we traded, and the reason that I did not take her was that Dr. Schenck said that his children were going on a visit to Izard County, and were going to use her, but told me that just as soon as they returned I might come and get her, and in about two weeks I went to get the mare, and when I got there they had not got back with her. I told Mr. Schenck that I didn't know whether I could come the next time or not, but if I didn't come I would send my little boy. So, in a few days I sent my little boy to Schenck's after the mare, and he brought her to me, and he never told me anything that Schenck should have said. At the time that I traded for this mare there

was nothing said about the title to said mare remaining in Schenck, or nothing was said about the title passing to me. I traded the mare in controversy to Terry Griffith.

Terry Griffith testified that he had no notice that Dr. Schenck claimed the mare until after he traded for her.

The court instructed the jury as follows:

"1. The court instructs the jury that this is an action of replevin, wherein plaintiff, Schenck, and the defendant, Griffith, both claim to be the owner of the mare in controversy in this suit, the defendant claiming the mare by purchase from Ike Davis. The court instructs the jury that the defendant, Griffith, only acquired such interest in the mare as Davis had at the time of his purchase; and if Davis had no title at that time the defendant, Griffith, would get nothing by his purchase.

"2. The court instructs the jury that in contracts of this kind between plaintiff, Schenck, and Davis the doing of the work according to contract is a condition precedent, and the said Davis would have to have done the work according to contract before he could claim the mare in controversy, which was his pay for doing the work, unless you find from the testimony that plaintiff delivered the mare to Davis in accordance with the contract without an express reservation of title in himself.

"4. The court instructs the jury that if you find from the evidence in this case that the plaintiff in this transaction with Davis had reserved the title in himself to the mare in controversy in this suit until Davis had done the work, and you further find that Davis had not done the work according to contract, then in that event the plaintiff would be entitled to recover.

"5. The jury is instructed that if you find for the plaintiff that you should find the value of the mare at such amount as the evidence shows her to have been worth at the commencement of this action, and you should also find for the plaintiff to the amount the evidence shows her usable value to have been worth from the time this suit was brought in the justice court until now."

Plaintiff offered instruction No. 3, which is as follows:

"3. The court instructs the jury that if you find from the evidence that after the contract between Davis and Schenck was made and at the time of the delivery of the mare that Davis sent his son after the mare, then for that purpose he constituted his son his agent; and if you find that plaintiff, Schenck, delivered the mare to Davis' son and at the time reserved the title in himself, it makes no difference whether the son informed the father or not."

Said instruction was refused by the court. Thereupon the court gave instruction No. 3½, on motion of the defendant, as a substitute for plaintiff's instruction No. 3, over plaintiff's objection, which is as follows:

"3½. The jury are instructed that if they find from a preponderance of the evidence that plaintiff sold the mare in controversy to Ike Davis, and that there was no agreement between the said defendant and Ike Davis, made at the time, that this title should remain in plaintiff until she was fully paid for. and the said Ike Davis sent his son after the mare, and that plaintiff delivered the mare to the son of Ike Davis, and called witnesses that the title to said mare should remain in him until fully paid, and that the son of Ike Davis understood and heard said statements by the plaintiff, then they would be authorized to find for the plaintiff."

Plaintiff offered instruction No. 6, as follows:

"6. The court instructs the jury that if they find from the evidence that Ike Davis sent his son to receive of the plaintiff the mare in question, and that said mare was delivered to the son of Ike Davis by plaintiff, in that event the boy would be for that purpose the agent of Ike Davis, and that Davis would be bound by what was said and done at that time, the same as though he had been present himself." This instruction was refused by the court.

Judgment was for defendant, and plaintiff has appealed

*Phillips & Kay* and *George W. Williams,* for appellant.

Infants may have power to charge a principal. 1 Am. & Eng. Enc. Law, 945; 1 A. K. Marsh. 436; 117 Mass. 479;

119 Mass. 195; 52 Vt. 525. An agent to manage a business has the same power as the principal, and the principal is bound by agent's acts. 1 Am. & Eng. Enc. Law, 1022; 49 Ark. 320; 56 Ark. 245; 60 Ark. 433; 25 Ark. 261; 56 Ark. 627. One who holds out another will be bound by his acts, though he may have given him limited instructions unknown to the person dealing with him. 42 Ark. 97; 57 Ark. 203; 58 Vt. 561; 73 N. Y. 5; 26 Vt. 112. There was no evidence to support the verdict. 2 Benj. Sales, 581, 667; 13 Johns. 434; 68 Ark. 230; 47 Ark. 363; 54 Ark. 476.

*Joe L. Short* and *Bradshaw, Rhoton & Helm,* for *appellee.*

Those dealing with an agent must look to his authority. 23 Ark. 411; 1 Am. & Eng. Enc. Law, 987; 62 Ark. 33; 1 Am. & Eng. Enc. Law, 883; 24 L. R. A. 339. To bind a principal by ratification, assent or acquiescence in the prior acts and a knowledge of the material facts must be brought home to him. 2 L. R. A. 808; 6 S. W. 808.

WOOD, J. The instructions fairly presented the issues covered by the evidence. The court did not err in refusing instruction No. 3 offered by the plaintiff. The proof shows that the contract for the sale of the mare, whatever its terms might have been, was made with Ike Davis. The proof also shows that George Davis was sent by his father to get the mare. He was a mere lad. His only mission, as the proof shows, was to go to plaintiff's house for the animal and to take her to Ike Davis. The boy was a special agent of his father for this particular purpose only, and he had no authority, real or apparent, to change the terms of the contract between his father and the plaintiff as to the sale of the mare. The instruction as offered ignored the evidence and the principle of law that one who deals with a special agent is bound to ascertain the nature and extent of his authority. Mechem on Agency, § 289; *City El. St. Ry. Co.* v. *Exch. Nat. Bank,* 62 Ark. 33; *Berry* v. *Barnes,* 23 Ark. 411.

Instruction No. 3½ was more favorable to appellant than the facts and the law warranted. As we have seen, George Davis, the special agent, had no authority to alter in any manner

the contract that had been made between plaintiff and his father. Appellant either reserved title to himself under the proof when the contract was made with Ike Davis, or he did not. But if he did not do so, then he could not do so afterwards with one without authority, real or apparent, to assent to such a condition. To have bound Ike Davis by estoppel on the ground of acquiescence in or ratification of such condition, it was not enough simply for his son George to have heard and understood, but knowledge on the part of Ike Davis himself would have been essential. So the instruction was not correct; but appellant cannot complain of the error, for it was in his favor. Moreover the objection to the giving of "request No. 3½" is not reserved in motion for new trial. What we have already said shows that the court did not err in refusing appellant's request for instruction No. 6.

No instructions were asked upon the question of innocent purchaser, and appellant will not be permitted to complain here of errors not mentioned in the court below. The answer set up that appellee was an innocent purchaser. The burden of proof was on appellant in the whole case. There was evidence showing that appellee *"had traded for the mare,"* while she was in the possession of Ike Davis, and that appellee obtained lawful possession of her without any notice of appellant't claim. If appellant desired, therefore, to claim that appellee was not an innocent purchaser, it should have presented the question to the trial court.

The real question at issue, as it appears to us from the record, was whether appellant, when he sold the mare in controversy to Ike Davis, reserved the title in himself until the consideration named was duly performed. This was a question of fact purely upon conflicting evidence, and was fairly submitted to the jury for decision. The judgment is therefore affirmed,