PINE BLUFF & ARKANSAS RIVER RAILWAY COMPANY *v.* McKENZIE.

Opinion delivered April 15, 1905.

CARRIER—SUFFICIENCY OF DELIVERY.—Where a railroad company, in pursuance of its custom, at the request of a shipper, had left empty cars on its sidetrack, with the agreement, implied if not expressed, that it would remove the cars the next day if they were loaded, and carry them on to their destination, and the cars were accordingly loaded with freight and closed by the shipper, and notice thereof given to the railroad company, the delivery was complete, although no bill of lading was executed, and the company became liable for loss of the freight by fire.

Appeal from Jefferson Circuit Court.

ANTONIO B. GRACE, Judge.

Affirmed.

*S. H. West* and *Bridges & Wooldridge,* for appellant.

The court erred in excluding the testimony of H. E. Martin, as to whose land the spur track was on. Hutch, Car. § 94. The delivery must have been complete. 56 Ark. 288; Hutch. Car, § 82. Usage is legal evidence of custom. 17 Ark. 428; 58 Ark. 129; 29 Am. & Eng. Enc. Law, 412.

*W. T. Young* and *M. Danaher,* for appellee.

Delivery to appellant was complete. Hutch. Car. § § 99, 100; 42 Tex. 467; 29 Am. & Eng. Enc. Law, 410.

BATTLE, J.   B. F. McKenzie sued the Pine Bluff & Arkansas River Railway Company for the value of one carload of cotton and of one carload of cotton seed, and interest thereon. He alleged in his complaint that, on the 29th day of October, 1901, he delivered to the defendant, at L. W. Clement's Gin, for immediate transportation, one carload of cotton, of the value of $1,227.60, to be shipped to Memphis, Tenn., and one carload of cotton seed, of the value of $300; to be shipped to Little Rock, Ark.; that said defendant accepted the cotton and seed, and, in consideration of a certain sum to be paid, undertook to transport and deliver the same at the places mentioned, and wholly failed to do so; and that thereby the cotton and seed were entirely lost; and asked for judgment for the value thereof and interest thereon. The defendant answered, and denied these allegations.

The defendant constructed a switch or sidetrack to its railway at a place called Clement's Gin, upon which it received cotton and cotton seed for transportation. When any one wanted a car for shipment of his cotton or seed from that place, he would request the defendant to furnish the same, at the same time making known its destination, and it would do so, leaving the cars on the sidetrack to be loaded by the shipper, and, when this was done, would move the cars on the way to their destination by the first train passing after they were loaded. There was

some controversy or conflict of testimony as to the custom of the defendant in respect to the time and manner it delivered bills of lading for the freight. But, be this as it may, the undisputed evidence shows that it frequently delivered them after the goods had been shipped, and that they were not conditions precedent to the shipment.

Plaintiff requested the defendant to furnish him with two cars at Clement's Gin, one for cotton to be shipped to Memphis, Tenn., and the other for cotton seed to be shipped to Little Rock, Ark. On the 29th of October, 1901, the two cars were left by the defendant on the sidetrack at the place designated; and on that day they were loaded by the plaintiff, one with cotton and the other with seed; and plaintiff notified the conductor of defendant of that fact, and he promised to take them out on the next morning. About 3 o'clock on the next morning the cars and contents were destroyed by fire. The cotton and seed were of the value alleged in the complaint.

The court instructed the jury, at the request of the plaintiff, as follows:

"The liability of a common carrier commences at the time the goods to be shipped are received by it for transportation, and not from the time of the issuance of a bill of lading only, When the shipper surrenders the entire custody of his goods to the carrier for immediate transportation, and the carrier so accepts them, that instant the liability of a common carrier begins. When this occurs, the delivery is complete, and it matters not how long or for what cause the carrier may delay putting the goods in transit; if a loss is sustained not occasioned by the act of God or the public enemy, the carrier is responsible.

"Therefore, if the jury believe from the evidence that the plaintiff ordered two cars from the defendant to be placed for loading at Clement's Gin, one to be loaded with cotton for Memphis, and the other with cotton seed for Little Rock; that the defendant placed the cars as ordered, and the plaintiff loaded them with the cotton and cotton seed as aforesaid, closed the cars, and notified the conductor in charge of the defendant's train that the said cotton and cotton seed were loaded and ready for shipment, and requested him to take them out, having previously

given him the destination of said cotton and cotton seed, and that the conductor agreed to do so; and if you further believe from the evidence that, under the usual and customary course of dealings between the plaintiff and defendant, this was all that was required of the plaintiff by the defendant before putting the goods in transit, then you are instructed that this was a complete delivery of the cotton and cotton seed to the defendant for shipment, and the defendant is liable to the plaintiff for the loss of the said cotton and cotton seed."

And, at the request of the defendant, as follows:

"IV.   If the jury believe from the evidence that, according to the custom governing shipments of cotton and seed which existed on the line of the defendant at the time and place of the destruction by fire of the plaintiff's cotton and seed, it was necessary for the shipper of cotton and seed, in order to effect a shipment or delivery of his cotton or seed to the defendant, to offer a bill of lading for signature or give such shipping directions to the agent or conductor to whom such shipment was offered as to enable him to make out a bill of lading, and, without doing such things, the plaintiff or his agent simply told the conductor of defendant at English on the night of October 29 that plaintiff had loaded the cars with cotton and seed, and desired them moved, then plaintiff cannot recover, and you should find for the defendant."

The jury returned a verdict in favor of the plaintiff for $1,573.43; judgment was rendered in his favor for that amount, and the defendant appealed.

Appellant contends that the evidence fails to show a complete delivery of the cotton and seed, that a bill of lading was executed; and fails to show that it was the custom of appellant to accept the delivery of freight until it was executed. This was not necessary. The bill of lading properly follows the delivery, and is an acknowledgment of that fact. While it may be used as evidence of that fact, it is not the only evidence. Here appellant, in pursuance of its custom, at the request of the appellee, had left cars on its sidetrack, with the agreement, implied if not expressed, that it would remove the cars the next day, if they were loaded, and carry them on to their destination. Notice of

that fact was given to appellant. The cars were loaded and closed. The control and possession of their contents were completely surrendered to the railroad company. Nothing remained to be done by the appellee. The cotton and seed awaited the coming of the appellant's train. The cars were in its possession, and were the receptacles in which it accepted the delivery of the cotton and seed. They were left there for that purpose and with that understanding. The delivery was complete, and appellant is responsible for their loss. *Railway Company* v. *Murphy,* 60 Ark. 333.

Judgment affirmed.