MATTHEWS & HOOD v. ST. LOUIS, IRON MOUNTAIN & SOUTH-
ERN RAILWAY COMPANY.

Opinion delivered April 17, 1916.

CARRIERS—DELIVERY OF FREIGHT TO CARRIER—LIABILITY FOR LOSS.—Plaintiff procured a freight car to be set out on its spur track and on the following day loaded the same with cotton and closed the doors of the car, and during the night the car and contents were destroyed by fire. *Held,* the carrier was not liable for the loss, the car and contents not having been delivered to it.

Appeal from Lee Circuit Court; *J. M. Jackson,* Judge; affirmed.

*D. S. Plummer* and *Daggett & Daggett,* for appellants.

1.    There was a delivery of the cotton to the company.    79 Ark. 100; 60 Ark. 333; 79 *Id.* 353; 89 *Id.* 178;

87 Am. Dec. 301; 104 S. W. 377. The shipper had done everything within his power to deliver the freight. 87 Am. Dec. 301; 104 S. W. 377. The liability attaches when the shipment is delivered for immediate transportation. 104 S. W. 377.

The company had notice that the car was loaded and ready for shipment when the freight train passed. 4 R. C. L., § § 171-2; 32 L. R. A. (N. S.) 319. The delivery was complete and the company was liable.

*Troy Pace* and *W. R. Satterfield,* for appellee.

1.   There was no delivery of the cotton. 4 R. C. L., § 170; 96 Am. Dec. 742; 60 Ark. 333; 80 *Id.* 178; 87 *Id.* 298; Hutchinson on Car. (3 ed.), § 105.

HART, J.   J. L. Matthews and J. B. Hood sued the St. Louis, Iron Mountain & Southern Railway Company to recover the value of a car load of cotton which they alleged was destroyed by fire after they had delivered the cotton to the railroad company for immediate shipment. The facts are as follows:

The plaintiffs, Matthews and Hood, are partners engaged in the farming and supply business and in the operation of a gin near Gassett. Gassett is a flag station on the defendant's line of railroad between Memphis and Marianna.

The railroad company, at the request of Matthews & Hood, put in a sidetrack for their use and benefit in shipping over defendant's line of road. Other parties in the neighborhood also used the spur track for the shipment of their goods. The spur track was constructed at the cost of the plaintiffs, but was situated on the right-of-way of the defendant. There was no agent at Gassett and when the plaintiffs or any one else wanted a car for the shipment of their cotton, cotton seed or any product they would request the agents of the defendant to furnish the same and it would do so.

The defendant knew that all the cotton of the plaintiffs delivered for shipment would be consigned to Memphis. The established custom was that when the plain-

tiffs or any other shippers wanted a car, they would no-
tify the conductor of the defendant's local freight train
of that fact and he would bring in an empty car on his
next trip and set it on the spur track.   When the car was
loaded, the plaintiffs would notify the conductor of the
next train going in the direction of the place to which the
goods was shipped and would present to the conductor
what was called a conductor's receipt for the goods and
the conductor would sign the receipt in duplicate and then
attach the car to his train and carry it to destination. The
conductor's receipt contained the statement that the
goods were received in apparent good order and consigned
to the place named in the receipt.   Article and weights
were also given and the receipt then contained the follow-
ing:   ''This memorandum is neither a receipt nor a bill
of lading, and the property will be transported only un-
der the terms and conditions of a regular bill of lading to
be procured by the shipper upon delivery of this memor-
andum at the first agency station in the direction that the
freight moves.''

In November, 1914, the local freight train of the de-
fendant made tri-weekly trips between Memphis and
points south.   The plaintiffs applied to the conductor on
the south-bound local freight train for a car to be set in
at the spur to be loaded with cotton to be shipped to Mem-
phis.   On the following day, while the train was on its
return trip to Memphis, the conductor set in the car as re-
quested by the plaintiffs.   On the next day the plaintiffs
caused this car to be loaded with cotton, closing all the
doors. On this date the local freight train went south. On
the next morning, before the train reached the spur on
its return trip north to Memphis, the car containing the
cotton was discovered to be on fire and the cotton was de-
stroyed by the fire.

The circuit court was of the opinion that there had
been no delivery of the cotton and the case is here on
appeal.

Counsel for the plaintiffs rely on the cases of *Rail-
way Company* v. *Murphy,* 60 Ark. 333, and *Pine Bluff &*

*Arkansas River Ry. Co.* v. *McKenzie*, 75 Ark. 100.   In the McKenzie case the facts were in all essential respects similar to the case at bar, with the addition that in that case the plaintiff notified the conductor of defendant company of the fact that the cars had been loaded and the conductor promised to take them out on the next morning.   They were destroyed before that time, however, by fire.

In the opinion the contention of the railway company and the ruling of the court is stated as follows :   "Appellant contends that the evidence fails to show a complete delivery of the cotton and seed, that a bill of lading was executed ; and fails to show that it was the custom of appellant to accept the delivery of freight until it was executed.   This was not necessary.   The bill of lading properly follows the delivery, and is an acknowledgment of that fact.   While it may be used as evidence of that fact, it is not the only evidence.   Here appellant, in pursuance of its custom, at the risk of the appellee, had left cars on its sidetrack, with the agreement, implied if not expressed, that it would remove the cars the next day, if they were loaded, and carry them on to their destination.   Notice of that fact was given to appellant.   The cars were loaded and closed.   The control and possession of their contents were completely surrendered to the railroad company.   Nothing remained to be done by the appellee.   The cotton and seed awaited the coming of the appellant's train.   The cars were in its possession, and were the receptacles in which it accepted the delivery of the cotton and seed.   They were left there for that purpose and with that understanding.   The delivery was complete and appellant is responsible for their loss."

All opinions should be construed with reference to the facts to which they apply.   It will be noted that in the quotation from the McKenzie case, it is stated that the railroad company in pursuance of its custom, at the request of the shipper, had left cars on its sidetrack with the agreement that it would remove the cars the next day if they were loaded and carry them on to their destina-

tion. The court then says that notice of that fact was given to the railroad company, evidently meaning, notice of the fact that the cars had been loaded and were ready to be removed, had been given to the railroad company. Stress is laid upon the fact that nothing else remained to be done by the shipper and that the control and possession of the cars had been completely surrendered to the railroad company. The court evidently meant to lay stress on the fact that the cars had been loaded by the shipper and notice of that fact had been given to the railroad company through the conductor of the train which was to carry the cars, and the conductor accepted the shipment. So the court might well say that the delivery was complete and that the railway company was responsible for the loss, notwithstanding the conductor's receipt had not been issued in accordance with the customs.

In the Murphy case the court said: "Now, recurring to the facts of this case, it appears that the shipper, Murphy, had done all that was required of him, according to his particular course of dealing with the carrier, to further the shipment of his cotton. He had called for a car when his cotton was ready for transportation. The company had complied with his request by placing its car upon its own switch to be loaded. Murphy had loaded it, closed it, filled out the blank form of receipt to be signed by the conductor, and had notified the agent that the cotton was loaded and ready for shipment giving the place of destination. He had flagged every passing freight, and requested removal. He had done, it seems, all in his power, and all that the company required of him before shipment. What remained was exclusively the work of the carrier."

In that case, too, the court held that the delivery to the carrier was complete, notwithstanding no bill of lading had been issued. Those cases are clearly distinguishable from the facts in the present case. In both the Mc-Kenzie and Murphy cases, the shipper had done all that he could do. He had loaded the cars and notified the

proper agents of the railroad company that the cars were ready to be moved. In the McKenzie case the conductor of the train which was to move the cars had accepted the shipment. Therefore, the court held that the delivery was complete, even though the conductor's receipt had not been issued according to custom. This was so because the shipper had done all that he was required to do and the conductor having authority to accept the shipment might receive it whether the conductor's receipt was or was not issued. So, too, in the Murphy case the shipper had done all that he could do, and the removing of the car after it was loaded and closed awaited solely the convenience of the railroad company.

We do not think under the facts of the present case that there was any delivery of the cotton. There could have been none until the conductor had been notified that the car was loaded and ready for immediate shipment, and had accepted the same either verbally or by issuing a conductor's receipt according to custom.

It follows that the judgment of the circuit court must be affirmed.

### DISSENTING OPINION.

McCulloch, C. J. The opinion of the court is, I think, founded on an immaterial distinction between the facts of this case and the McKenzie case (75 Ark. 100) in regard to the notice to the carrier that the commodity had been loaded for shipment. The right to recover was not, in that decision, based on the fact that such notice had been given, but on the fact that the cotton and cotton seed had been loaded into the car which the carrier had, by arrangement with the shipper, placed on the side-track for the purpose. Judge Battle, speaking for the court, said: "The cars were in its (the carrier's) possession and were the receptacles in which it accepted the delivery of the cotton and seed. They were left there for that purpose and with that understanding. The delivery was complete, and appellant is responsible for their loss."

It is true, the fact is mentioned in the opinion that the shipper notified the conductor of the train that the

cotton and seed had been loaded into the cars, and that the conductor promised to take the cars out the next day; but if the giving of such notice was the essential element of such delivery, why was it necessary to say anything in the opinion about the cotton and seed having been loaded into "the receptacles in which it accepted delivery" and which had been "left there for that purpose and with that understanding" What the court decided in that case was that where the parties (the shipper and the carrier) had agreed in advance that delivery should be made by loading into cars placed by the carrier on its own side-track for the purpose of receiving the commodity, the delivery was complete as soon as the commodity was so loaded, for at that time it passed into the possession of the carrier. That is familiar law, for the parties to a contract for delivery of chattels may always agree in advance what shall constitute such delivery, and it is complete when made in the manner so agreed on. "It is entirely competent for the parties to agree as to what shall constitute a delivery as between themselves, and their agreement in this respect will usually be given effect." 2 Mechem on Sales, § 1186.

It appears to me that there is no well founded distinction between this and the McKenzie case, and that the latter should control as the established law on the subject. I therefore dissent from the conclusions of the majority.

Mr. Justice KIRBY concurs.