KIRKPATRICK FINANCE COMPANY v. STOTTS.

4—2593

Opinion delivered June 20, 1932.

*Roy Penix,* for appellant.

*Dudley & Barrett,* for appellee.

MEHAFFY, J. On December 29, 1928, the appellee, W. E. Stotts, purchased a Ford automobile from the Jonesboro Machine Company, of Jonesboro, Arkansas. He traded in an old automobile and paid some cash. The amount allowed for the old automobile and the cash paid left a balance of $360 due as the cash price of the automobile that he purchased. He, however, signed a contract, which stated that the total time price was $793.50; that the down payment was 50 per cent., and the amount of the note $396.70. This amount was to be paid in monthly installments of $39.67 each. The first installment was due January 29, 1927. The agreement between the purchaser and seller was that, if paid in full within 30 days, the balance would be $360. The difference between the cash price and the time price was interest, carrying charges, and insurance.

The contract signed by Stotts showed the amount of payments and when due, and there, in the face of the note, was written the following in ink: "1/29/29 received of W. E. Stotts $360 on this contract. Jonesboro Machine Co., by N. B. Stroud."

The contract provided that payments should be made to appellant, Kirkpatrick Finance Company, St. Louis, Missouri. It also retained title of the automobile until paid.

Stotts paid the $360, which was the amount due, less carrying charges, interest and insurance, within 30 days after he purchased the automobile. He never at any time made a payment to the appellant. The Jonesboro Machine Company, however, made five payments of $39.67 each to appellant.

It appears from the evidence that the appellant transferred the contract to the Industrial Savings Trust Comany, and thereafter the Jonesboro Machine Company became insolvent, and the Kirkpatrick Finance Company repurchased the Stotts note on May 27, 1929.

On August 7, 1929, the appellant brought suit in the circuit court against W. E. Stotts and J. Q. Lane as trustee in bankruptcy of the Jonesboro Machine Company, alleging that Stotts, in December, 1928, purchased, under a conditional sales contract, a Ford automobile for the sum of $793.50, of which he paid in cash $386.80, leaving a balance of $396.70, payable in ten equal monthly installments of $39.67; that Stotts executed his note and contract, in which title to the car was reserved; that, after the execution of the note and before maturity of any installments, the plaintiff purchased the note from the Jonesboro Machine Company; that thereafter the Jonesboro Machine Company was adjudicated a bankrupt, and J. Q. Lane became its trustee; that Stotts defaulted in the payment in June, and that the balance due at the time of bringing the suit was $198.35, principal and interest; that Stotts refused to pay the balance, and judgment was asked for the $198.35 with interest.

There was a specific attachment and summons served, and Stotts executed a bond and retained the property.

W. E. Stotts filed answer admitting the contract, but denied that he had defaulted in the payment of any installment, and denied all the material allegations in the complaint, alleging that he paid $433.50 at the time the contract was entered into, and executed his note for a balance of $360; that on January 21 he paid the balance, $360, to Jonesboro Machine Company, which was the agent of the plaintiff for the purpose of receiving payments from defendant and sending same forward to plaintiff; that the Jonesboro Machine Company had authority to, and did, collect from the defendant and other purchasers under similar contracts, and that the Jonesboro Machine Company remitted plaintiff the first five payments on said contract.

There was a trial by jury, and a verdict and judgment for defendant.

Appellant introduced in evidence the note and contract, and the contract showed that at the time it was entered into there was printed on the back of the note: "For value received the within note is indorsed to Kirkpatrick Finance Company, St. Louis, Missouri, without recourse. Jonesboro Machine Company, dealer, by N. C. Stroud, Pres."

R. C. Duffin, the secretary-treasurer of the Kirkpatrick Finance Company, and general manager of said company, testified that the Stotts note was bought by appellant January 4, 1929; that the balance due on purchase price was $198.35, and that appellant did not authorize the Jonesboro Machine Company to act as agent for the purpose of receiving payments on the Stotts note, and never gave any general authority to the Jonesboro Machine Company to act as agents on any other contract; that the Jonesboro Machine Company might have been given specific authority to collect on certain notes and contracts, but not on the Stotts note; that the appellant sold a group of notes, but not all of its notes, to the Industrial Savings Trust Company; that it afterwards repurchased the Stotts note May 27, 1929, and is now the legal owner of same; that the first four payments on the Stotts note came to the appellant in the form of dealer checks; that the Jonesboro Machine Company did not make the collections at the request of appellant; that appellant notified Stotts that it had purchased his note, and that payments should be made to it.

The appellant received four letters from the Jonesboro Machine Company, each inclosing checks for the sum of $39.67. The last of these letters was dated April 18, 1929. Witness testified that on May 31, 1929, appellant received a check for $39.67 in the form of a money order; that the record is not clear as to who sent this payment.

W. E. Stotts testified in substance that he purchased the automobile for $735 and paid $360 cash, and gave

his note for the difference; that at the time he entered into the contract he told Mr. Stroud, the agent of the Jonesboro Machine Company, that he would pay the difference in less than 30 days. He did pay it off in less than 30 days, and introduced the receipt signed by Jonesboro Machine Company, showing the payment.

The first he learned that the Kirkpatrick Finance Company was expecting payment was after the Jonesboro Machine Company went into bankruptcy. He signed the note sued on with the understanding that, if paid off in 30 days, he was to get $36 and some cents knocked off. The Jonesboro Machine Company was to hold the note 30 days. He understood that, if the note went away, the Kirkpatrick Finance Company was to own it. He received notice from the Kirkpatrick Finance Company that it had the note. He received other notices from this company. When he paid the $360, Mr. Stroud had already sent the note to the finance company. He notified the Industrial Savings Trust Company May 18, 1929, that he had paid the note in full and held the receipt.

After he made the last payment, he went to Mr. Stroud, and he told him not to worry about it. Stroud told him that, if he paid the note within 30 days, he would knock off the carrying charges and interest. The difference between $360 balance due and the amount of the note was interest, carrying charges and insurance.

Mamie Lilly testified in substance that she was working for the Jonesboro Machine Company at the time Stotts bought the car; that during the years 1927, 1928 and 1929 the average monthly sales of the Jonesboro Machine Company of new cars was about 30 a month, and half of the notes for the balance of the purchase price of these cars was bought by the Kirkpatrick Finance Company; that practically 15 cars each month were financed by the finance company for the Jonesboro Machine Company; that of over half these contracts the purchasers would make their payments to the Jonesboro Machine Company, and it would forward the money to the finance company. This continued up to the time of

the bankruptcy of the machine company. There was never any objection from the finance company to that method of handling the business. Mr. Stotts paid his account in full to the machine company. The machine company did business with the finance company from 1925 on. She saw Mr. Stotts make the $360 payment. She sent five checks for $39.67 each to the finance company to apply on the Stotts note. The machine company did not notify the finance company at the time it collected the $360. The machine company went into bankruptcy in May or June, three years ago.

Emery Buttrey testified that he was present when Stotts paid the note.

The appellant requested the court to submit to the jury three questions, or special findings, and these requests were refused by the court. This was in the discretion of the court. *Railway Co.* v. *Pankhurst,* 36 Ark. 371.

The appellant and appellee both made requests for numerous instructions, which the court refused. The court gave some instructions requested by appellant, but it is not necessary to set out the instructions here.

The court gave, on its own motion, the following instruction:

"The plaintiff sues the defendant on a certain promissory note introduced in evidence, which the defendant admits that he executed, and the testimony of the plaintiff is to the effect that there is now due on said note an unpaid balance of $198.35, with interest. The defendant states that the full amount of the indebtedness represented by said note was paid to the Jonesboro Machine Company, and defendant contends that the said Jonesboro Machine Company is the agent for the Kirkpatrick Finance Company, and authorized to accept his said payment.

"You are instructed that the execution of said note having been admitted, the burden of proof is on the defendant to show that the indebtedness represented thereby has been paid in such manner as to discharge

him from further liability thereon. There is no evidence in this case of express authority given to the Jonesboro Machine Company to accept payment of the note in question. Your verdict will therefore be for the plaintiff for the sum sued for, unless you find by a preponderance of the evidence that the Jonesboro Machine Company's collection of the payment, if any, from the defendant was ratified and confirmed by the plaintiff with full knowledge of all the facts.''

There was a motion for new trial filed and overruled, and the case is here on appeal.

It will be noticed from the instruction given by the court that the only question submitted to the jury was the question of ratification, and the jury found that the acts of the Jonesboro Machine Company were ratified by the Kirkpatrick Finance Company.

The undisputed evidence shows that the Kirkpatrick Finance Company had been doing business with the Jonesboro Machine Company since 1925; that the machine company sold on an average 30 cars a month; that half of these notes were purchased by the Kirkpatrick Finance Company, that is, the notes for 15 cars a month, at least during the years 1927, 1928 and 1929, and that the purchasers, during these years, paid directly to the machine company, and it, after collecting the money, would pay it to the finance company. In other words, the evidence shows that the transactions with reference to the purchase of the car by Stotts, and the payments for same, were the same as characterized their dealings for the last several years. It is also undisputed that the purchase price of the car was $735, and that $360 of this was paid at the time of the purchase. Not only were these transactions and dealings carried on for years, but the printed contracts showed that the purchase price was to be paid at the office of the finance company in St. Louis, Missouri.

In dealing with the machine company for years, and permitting the machine company to collect for it, the finance company not only knew of the method of doing

business, but ratified it. It was bound to know that the payments made by Stotts were made to the machine company, because all of the payments that it received were received from the machine company, and not from Stotts.

The evidence also shows that it was the agreement between Stotts and Stroud, of the machine company, that, if Stotts would pay the balance within 30 days, the balance would be $360. There is no dispute about this $360 being paid.

Stotts testified that the difference between the $360 and the amount named in the contract was for carrying charges, insurance and interest. If it were paid in cash or within 30 days, there would be no carrying charges, and the finance company would not have to carry insurance, and there would be no interest.

When all the facts and circumstances are considered, they show a ratification by the Kirkpatrick Finance Company of the acts of the Jonesboro Machine Company. The evidence shows that there was no objection at any time made by the Kirkpatrick Finance Company, and doubtless would have been none but for the bankruptcy of the Jonesboro Machine Company.

A principal cannot ratify a portion of an unauthorized transaction and not ratify the whole of it. He cannot avail himself of acts that are beneficial to him and repudiate the acts that are detrimental to him. 21 R. C. L. 923.

There need not be an express ratification, but ratification may be, and frequently is, implied from the acts of the parties, and when the facts justify the conclusion that the principal has ratified the acts, it is as effective as if there had been an express ratification.

Ratification, like agency itself, may be either established or disproved by the facts.

"In a great majority of the cases the ratification of unauthorized acts of an agent need not be and is not made expressly, but is implied from the acts and words of the principal, except where the ratification is required

to be in a particular form. * * * As between the principal and third person dealing with an agent, less is required to constitute a ratification than is required between the principal and the agent." 2 C. J. 488.

Less is required because a principal is frequently bound by the acts of the agent not within the scope of his authority. He may bind the principal if his acts are within the apparent scope of his authority. In other words, the act of the principal may be such as to lead third persons to believe that an agent has authority that in fact he does not have. In such case, the principal would be bound as to third persons.

The evidence was sufficient to justify the court in submitting to the jury the question of agency as well as ratification, but the appellant cannot complain at this not being done, because the instruction given by the court was as favorable to it as it was entitled to.

Under a certain set of facts a jury might find that the relation of principal and agent existed, without finding there was any ratification. If this had been submitted to the jury in the instant case, there would have been substantial evidence to justify a finding that the relation of principal and agent existed, but, as we have already said, the appellant cannot complain at this action of the court, and the appellee has made no objections to the court's refusal to instruct on the question of principal and agent.

Whether there was or was not a ratification was a question of fact for the jury. There is substantial evidence to support its verdict, and the judgment is affirmed.