St. Louis-San Francisco Railway Company, Thompson, Trustee *v.* Lee Wilson & Company.

4-8360                                206 S. W. 2d 175

Opinion delivered December 8, 1947.

*E. G. Nahler, E. L. Westbrooke, Jr.,* and *E. L. Westbrooke,* for appellant.

*Holland & Taylor,* for appellee.

MINOR W. MILLWEE, Justice. Appellee, Lee Wilson & Co., was plaintiff in the circuit court in an action against appellant, St. Louis-San Francisco Railroad Company for damages by fire to a carload of alfalfa meal. Plaintiff alleged that on June 20, 1946, it delivered 113 bags of alfalfa meal to defendant for shipment at Armorel, Arkansas; that the meal was accepted by defendant, placed in a boxcar and bill of lading issued and signed by defendant's regularly appointed agent, E. M. Regenold. It was further alleged that the meal was thereafter destroyed by fire caused by a spark from defendant's engine and was not delivered as directed by the bill of lading. There was a prayer for judgment for $351.71, the alleged value of the meal destroyed, and for interest and costs.

Defendant answered denying the allegations of the complaint. At the conclusion of plaintiff's testimony, defendant moved that the court take the case from the jury and find for defendant on the ground that the proof failed to sustain the allegations of the complaint.

The trial court held the proof insufficient to sustain that part of the complaint which alleged the fire was caused by the locomotive of defendant and withdrew that issue from the jury's consideration, but overruled that part of the motion relating to defendant's liability for the loss under the shipping contract. After defendant introduced its evidence on the latter issue, each party requested an instructed verdict in its favor. Thereupon, the trial court found for plaintiff in the sum of $351.71, which the parties agreed to be the value of the alfalfa meal destroyed. Defendant has appealed. Plaintiff has cross-appealed from the action of the trial court in withdrawing from the jury the consideration of the question whether defendant's locomotive caused the fire.

Plaintiff conducts extensive farming operations in the vicinity of Armorel, Arkansas, where it maintains a warehouse from which it makes carlot shipments of cotton, cottonseed, alfalfa meal and soybeans. Defendant does not maintain a freight station at Armorel, but freight service is provided over its line from Blytheville, Arkansas, trips being made every other day by the Blytheville switching crew. Prior to June 19, 1946, defendant's crew placed two cars on the loading track which runs alongside plaintiff's warehouse. On June 19th the loading of one car had been completed and the other was loaded in the west end with alfalfa meal. The half loaded car was switched to the main track where it was attached to an empty car and returned to the siding for further loading. The loading operation was then completed and the car was sealed and a bill of lading issued by E. M. Regenold, as agent for the defendant.

A fire was discovered in the west end of the car on the morning of June 20th and 113 bags of meal were destroyed. Regenold notified defendant of the fire and the burned meal was replaced by other meal and the car resealed with a new serial number which was noted on the bill of lading. On the same date the reloaded car was hauled to its destination by the railway company.

E. M. Regenold is plaintiff's manager at Armorel. Several years prior to the fire, defendant gave Regenold

written authority to sign bills of lading for the railway company on shipments of cotton and cottonseed made by plaintiff. This authority was renewed from year to year. Regenold testified that for five years, or longer, he had signed bills of lading, not only for the shipment of cotton and cottonseed, but also for alfalfa meal and soybeans, and that defendant had accepted these shipments without objection until after the fire occurred.

There was some dispute of this testimony by defendant's agent at Blytheville, Arkansas, who testified that he had made protests to Mr. Vance, plantiff's office man at Armorel, prior to the fire. A letter from the Blytheville agent to Regenold, written several months after the fire, was introduced in evidence. This letter discloses that Regenold continued to sign bills of lading for shipments of alfalfa meal and soybeans after the fire, and he was asked to discontinue this practice. The Blytheville agent also testified that, about two years prior to the writing of this letter, a similar letter had been written to Vance, but no such letter was introduced in evidence.

On the direct appeal it is first contended by defendant that there was no delivery of the car of alfalfa meal to it prior to the fire damage. Both parties agree that the rule to be applied in determining this question is stated in *Bogart & Co.* v. *Wade, Receiver,* 132 Ark. 49, 200 S. W. 148, as follows: "The test as to whether the relation of shipper and carrier had been established is: Had the control and possession of the cotton been completely surrendered by the shipper to the railroad company? Whenever the control and possession of goods passes to the carrier and nothing remains to be done by the shipper, then it can be said with certainty that the relation of shipper and carrier has been established. *Railway Co.* v. *Murphy,* 60 Ark. 333, 30 S. W. 419, 49 Am. St. Rep. 202; *Pine Bluff & Arkansas River Ry. Co.* v. *McKenzie,* 75 Ark. 100, 86 S. W. 834; *Matthews & Hood* v. *St. L., I. M. & S. Ry. Co.,* 123 Ark. 365, 185 S. W. 461, L. R. A. 1916E, 1194."

Defendant relies on the Bogart case, *supra,* for reversal here, but the facts are distinguishable from those in the instant case. In that case plaintiff placed the cotton on the carrier's platform where it remained 8 or 10 days without shipping orders being given before it was damaged by fire. The cotton was not loaded and as stated by the court: "The only issue in the case was whether or not the cotton was placed on the platform for immediate shipment and received by the railroad company for that purpose." The evidence on that issue being conflicting, it was held that error was not committed by the trial court in refusing to give a peremptory instruction in favor of the plaintiff.

The facts in the instant case are similar to those in *Pine Bluff & Arkansas River Ry. Co.* v. *McKenzie, supra,* where the commodity was burned about 3 a. m. of the day on which the carrier's conductor had promised to move the car. Mr. Justice BATTLE, speaking for the court, said: "Here appellant, in pursuance of its custom, at the request of the appellee, had left cars on its sidetrack, with the agreement, implied if not expressed, that it would remove the cars the next day, if they were loaded, and carry them on to their destination. Notice of that fact was given to appellant. The cars were loaded and closed. The control and possession of their contents were completely surrendered to the railroad company. Nothing remained to be done by the appellee. The cotton and seed awaited the coming of the appellant's train. The cars were in its possession, and were the receptacles in which it accepted the delivery of the cotton and seed. They were left there for that purpose and with that understanding. The delivery was complete, and appellant is responsible for their loss."

Appellant also relies on the case of *Matthews & Hood* v. *St. L., I. M. & S. Ry. Co., supra.* There the railroad had no agent at Gasset, the point of shipment, nor was a bill of lading issued. According to custom, a receipt was to be issued to the shipper by the carrier's conductor after the latter was notified that the car was loaded. The car was loaded and destroyed by fire before the shipper noti-

fied the carrier that it was ready for shipment. The case was distinguished from the McKenzie case, *supra,* and the court said: "We do not think under the facts of the present case that there was any delivery of the cotton. There could have been none until the conductor had been notified that the car was loaded and ready for immediate shipment, and had accepted the same either verbally or by issuing a conductor's receipt according to custom."

Under the facts in evidence in the instant case the trial court, sitting as a jury, was warranted in concluding that the delivery of the car of meal to defendant for shipment had been completed at the time the fire occurred. The car was upon the defendant's sidetrack and had been loaded, closed, sealed and the bill of lading issued by Regenold, whose authority to act as defendant's agent had not been questioned.

Defendant also insists that even though Regenold had authority to sign bills of lading for the shipment of alfalfa meal, still plaintiff is bound by the terms of § 4, paragraph "f," of the contract of shipment appearing on the back of the bill of lading. The case of *Chickasaw Cooperage Co.* v. *Y. & M. V. Ry. Co.,* 141 Ark. 71, 215 S. W. 897, is said to be authority for defendant's contention. In that case the commodity was destroyed by fire, under conditions similar to those in the instant case, at Clarksdale, Mississippi, where the railway company maintained a regular freight agency. This court held that there was no delivery where the loaded car was on the siding until it was attached to a train, even though a regular freight agency was maintained, under the following provision of the bill of lading: "Property destined to or taken from a station, wharf or landing at which there is no regularly appointed agent shall be entirely at risk of owner after unloaded from cars or vessels, and when received from or delivered on private or other sidings, wharves or landings shall be owner's risk until the cars are attached to and after they are detached from trains."

In other words, this court held that the second clause of the above paragraph was applicable to a station where

there was a regularly appointed agent. This case was decided in 1919. Two years later the U. S. Supreme Court placed a different construction on the identical provision in the case of *Yazoo & M. V. R. Co.* v. *Nichols & Co.,* 256 U. S. 540, 41 Sup. Ct. 549, 65 L. Ed. 1081. The court held that the second clause of the provision of the bill of lading, like the first, was applicable only to stations where there was no regularly appointed agent. Mr. Justice BRANDEIS, speaking for the court, said: "It could not have been intended that at stations where there are regularly appointed agents outgoing loaded cars for which bills of lading have issued and which are left standing on a siding solely to await the carrier's convenience are to be at the risk of the shipper."

The above provision, which was construed by this court and the U. S. Supreme Court, was a part of the Uniform Bill of Lading authorized by Congress and approved by the Interstate Commerce Commission. We have pointed out the conflicting interpretations placed on the provision to demonstrate that we would feel bound to follow the construction adopted by the U. S. Supreme Court if we were again confronted with the same question.

The provision of the bill of lading involved in the case at bar is: "Property destined to or taken from a station, wharf, or landing at which there is no regularly appointed freight agent shall be entirely at risk of owner after unloaded from cars or vessels or until loaded into cars or vessels, and, except in case of carrier's negligence, where received from or delivered to such stations, wharves or landings shall be at the owner's risk until cars are attached to and after they are detached from locomotive or train or until loaded into and after unloaded from vessels." This paragraph is also a part of the Uniform Bill of Lading approved by the Interstate Commerce Commission, and it is not unreasonable to assume that the change of wording might have resulted from the interpretation placed on the former provision by the U. S. Supreme Court.

Was Regenold the "regularly appointed freight agent" of the defendant within the meaning of this provision of the shipping contract? When the evidence is given its highest probative value in support of the trial court's finding on this issue we hold that he was, and that the above provision of the shipping contract is inapplicable here. It is true that Regenold was not a salaried employee of the defendant and that there was no regular freight depot maintained by defendant at Armorel. However, the defendant authorized and permitted Regenold to perform the duties of a freight agent in signing bills of lading for the shipment of commodities by the plaintiff. He was defendant's regularly constituted and appointed agent for this purpose, and the arrangement was for the mutual benefit of the parties. The testimony shows that defendant ratified the unauthorized acts of Regenold in signing bills of lading for shipment of alfalfa meal. It is well settled that when a principal has knowledge of the unauthorized acts of his agent and remains silent when he should speak, or accepts the benefits of such acts, he cannot thereafter be heard to deny the agency, but will be held to have ratified said agent's unauthorized acts. *Coffin* v. *Planters' Cotton Company,* 124 Ark. 360, 187 S. W. 309, and cases there cited; *Kirkpatrick Finance Co.* v. *Stotts,* 185 Ark. 1089, 51 S. W. 2d 512; Restatement of the Law of Agency, Vol. I, § 94.

The delivery of the alfalfa meal having been completed when the fire occurred, defendant became liable for the loss and the judgment of the trial court is affirmed on the direct appeal. It, therefore, becomes unnecessary to determine the issue raised by plaintiff on the cross appeal, *i. e.,* whether the trial court erred in withdrawing from the jury's consideration the question of defendant's responsibility for the origin of the fire.