**EMCO MILLS, Inc.**
v.
**ISBRANDTSEN CO., Inc.**
**No. 14899.**

United States Court of Appeals,
Eighth Circuit.
Feb. 15, 1954.

Rehearing Denied March 9, 1954.

**320**

Herschel H. Friday, Jr., Little Rock, Ark. (J. L. Shaver, Wynne, Ark., and Pat Mehaffy, Little Rock, Ark., on the brief), for appellant.

E. R. Morrison, Kansas City, Mo. (E. L. Westbrooke, Jonesboro, Ark., John A. Morrison, Clark Kuppinger, Morrison, Hecker, Buck, Cozad & Rogers, Kansas City, Mo., on the brief), for appellee.

Before GARDNER, Chief Judge, and THOMAS and COLLET, Circuit Judges.

COLLET, Circuit Judge.

The plaintiff corporation, the appellee on this appeal, an exporter of grain, located in New York City, gave an order to a grain broker in Memphis, Tennessee, to purchase for it for export from New Orleans, Louisiana, 50,000 bushels of soybeans at $2.08¼ per bushel. The president of defendant company, which is the present appellant, a dealer in grain at Earle, Arkansas, and a customer of the broker, called the broker by telephone October 13, 1950, and informed him that defendant desired to sell 10,000 bushels of soybeans. The broker informed defendant of the order from plaintiff for 50,000 bushels. Defendant had not

theretofore had any business transaction with plaintiff. Defendant informed the broker that he would sell plaintiff only 10,000 bushels. On the same day the broker prepared the following "confirmation," reciting the sale of 50,000 bushels and mailed a copy of it to plaintiff and defendant.

"Confirmation

"No. 1068-50

Received
Oct. 16, 1950

Standard Commission Company
414 Cotton Exchange Building
Memphis        October 13, 1950
Isbrandtsen Company, Inc.
26 Broadway
New York, N. Y.

"Gentlemen:

"We hereby confirm sale to you for the account of
Emco Mills, Inc.
Earle, Arkansas

       50,000 bushels No. 2 Yellow Soybeans. Mill dis-

of       counts to apply. Amendment 3 to rule 230 of the Kansas City Board of Trade rules to apply.

price      $2.08¼ per bushel f.o.b. Earle, Arkansas.

weights    New Orleans official    grades    New Orleans Official

       Seller's option October 20–November 15, 1950,

shipment  to New Orleans for export. Ship to Isbrandtsen Co., Inc., c/o Public Grain Elevator. Notify W. L. Richeson & Sons, 624 Gravier, New Orleans, La. Route to protect 19½¢ per 100 lbs. export freight rate to New Orleans, La. Permit No. will be furnished on request. Drafts and papers to Isbrandtsen Co., Inc., c/o Chase National Bank, New York, N. Y.

"Assuring you of our appreciation of this business, we are,

"Very truly yours,
"Standard Commission Company.
"By /s/ Dixon Jordan"

The confirmation was duly received by both. Defendant received its copy the same day or the next day. Earle, Arkansas, is only a short distance from Memphis. Defendant's president testified that he treated the confirmation as merely a memorandum, such as would be made of a telephone call. It was his custom and practice, and, as we must view the evidence, it was the custom and practice in that area for the buyer to send to the seller a contract after receipt of a broker's confirmation, which both buyer and seller would sign, the signed copies constituting the contract. Defendant's president testified that he expected daily to receive such a contract from plaintiff but did not. It is undisputed that the "confirmation" was received and was in defendant's files from the date of its receipt October 13 or 14. It is also undisputed that the order number on the "confirmation" was used as the identifying number of the transaction and was placed on the invoices at the time shipments were made. From October 21 through October 27, 1950, defendant loaded and shipped eight cars of soybeans pursuant to the agreement made in the telephone conversation. The

loading of approximately 10,000 bushels was completed on October 27, 1950. November 1, 1950, defendant's president went to the broker's office in Memphis and called his attention to the discrepancy between the amount agreed upon in the telephone conversation and the amount in the "confirmation", and told the broker that the contract for 10,000 bushels[1] had been filled and that if the broker had made a commitment to plaintiff for 50,000 bushels he, the broker, would have to furnish the remainder. Without the knowledge or consent of defendant, on the next day, November 2, 1950, the broker wired plaintiff asking for an extension on behalf of defendant of the time for fulfilling the 50,000-bushel commitment, which, as the commitment heretofore quoted shows, would not expire until November 15, 1950. There appears to have been no response to this wire. On November 15, 1950, plaintiff wired defendant as follows:

"Urgently Need Soybeans Bought From You When Do You Expect Ship Please Wire."

November 16, defendant answered as follows:

"Our Arrangement With Standard Commission Co. Was That We Would Supply 10,000 Bushels Of Beans. They Agreed To Purchase That Additional Amount If We Were Unable To Furnish. We Have Filled Our Commitment. You Will Have To Look To Standard Commission For The Unshipped Portion. Standard Commission Company Was So Notified November 1, 1950."

The difference between plaintiff and defendant, reflected by these telegrams, being called to the attention of the broker, the latter wrote defendant on November 17, 1950, as follows:

"With reference to your letter of November 16 concerning soybeans, and with reference to contract covered by our confirmation No. 1068–50 dated October 13, 1950.

"If the terms contained in the contract were not exactly in accordance with your understanding of the transaction, the time to have questioned it was immediately.

"We are brokers only in this transaction and arrangements for cancelling any unfilled portion must be made in agreement with the Isbrandtsen Company, the buyer."

It appears from the evidence that plaintiff was operating under the practice of depending upon the custom and practice adopted by the Grain and Feed Dealers National Association which required either party, upon receipt of a broker's confirmation, immediately, by wire or telephone, to notify the other party to the transaction and the broker of any substantial error in the terms of the confirmation, and in default of such notice the contract should be filled in accordance with the confirmation. Hence, plaintiff, not receiving any notice from defendant, relied upon the terms of the confirmation. No further shipments were made by defendant. Plaintiff was obliged to purchase the remainder of the 50,000 bushels on the market at an increase of 57¢ per bushel. It was stipulated that the additional cost to plaintiff over the contract price was $22,170.72 and that plaintiff owed defendant a balance on the soybeans delivered of $2,042.36.

Plaintiff filed this action in the United States District Court in Arkansas for the difference between the contract price and the purchase price of the soybeans bought on the market, as its damages for defendant's alleged breach of the contract. Defendant's defense was that the broker's authority as defendant's agent was limited to making a contract for the sale of 10,000 bushels; that the contract was for that amount; and that it had been performed.

Over plaintiff's objection and motion for a directed verdict, the issue of whether defendant had ratified the contract

---

1. For reasons we deem immaterial, the actual number of bushels shipped was somewhat in excess of 10,000.

as submitted to plaintiff and defendant in the confirmation for 50,000 bushels, or whether the contract was for only 10,000 bushels, was submitted to a jury. The jury found for the defendant. Plaintiff then filed its motion for judgment notwithstanding the verdict. The court sustained the motion on the ground that the undisputed evidence showed ratification. The decisive question is whether by failing to raise any objection to the confirmation within a reasonable time defendant ratified the confirmation as the contract.

The question is raised as to whether plaintiff's motion for a directed verdict sufficiently directed the trial court's attention to the insufficiency of the evidence to show lack of ratification to authorize plaintiff to rely on that point in its motion for judgment notwithstanding the jury's verdict. The motion was adequate in that respect.

It is conceded that the broker was the agent of both plaintiff and defendant. It is conceded by plaintiff for the purposes of this appeal that the broker did not originally have authority to bind defendant to a 50,000-bushel contract. Defendant concedes that the broker was its agent, but contends that his authority extended only to the making of a 10,000-bushel contract. The trial court concluded that defendant was obligated under the law to give notice of the error in its agent's "confirmation" and, failing to do so, it ratified the contract as stated in the confirmation, and there being no dispute that defendant received it and had knowledge of it, defendant was bound thereby. The parties apply the law of Arkansas. We do likewise.

The broker, as the parties agree, was the agent of both parties. He did not have authority in the first instance to bind defendant to the sale of 50,000 bushels. We need not discuss that question further.

In determining whether there was no ratification of the confirmation, as the jury found, the evidence must be viewed in the light most favorable to the verdict. We have undertaken to so state the material facts. If there was substantial evidence to support the verdict, it must be sustained. As heretofore stated, there is no dispute of fact about the receipt of the confirmation by defendant on or about October 13, and its retention, without objection to its terms or notice thereof to plaintiff, until November 1, 1950, if it be assumed that notice to the broker on that date was notice to plaintiff. Otherwise, there was no notice to plaintiff until November 16, 1950. Nor can there be any question of the knowledge of defendant of the number of bushels stated in the confirmation. Even if defendant did not examine the confirmation at the time of its receipt and even if it was not charged with knowledge of its contents by the receipt and retention of the confirmation, it certainly had actual knowledge of the number of bushels stated in the confirmation at the time shipment commenced, and the confirmation and its number were used as the memorandum of the transaction.

Because there was a real conflict in the evidence as to whether the rules of the Grain and Feed Dealers National Association reflected the custom and practice of the business of both plaintiff and defendant, those rules may not be made the controlling criterion of the duty defendant owed plaintiff, and hence noncompliance with those rules by defendant will not ipso facto constitute ratification. Nor will defendant's shipment of approximately 10,000 bushels, under the circumstances of this case, constitute a partial acceptance of the 50,000-bushel contract, with the result that that action constituted a ratification of the larger commitment. The contract was either a 10,000-bushel contract or one for 50,000 bushels. If it was the former, the shipments made were pursuant to that contract. The jury so found. Unless there was a conclusive ratification of the 50,000-bushel contract because of the failure to object to the confirmation, the shipments made will not furnish the ratification.

The law of Arkansas as announced by the Arkansas Supreme Court is settled that before one can be held to have ratified an unauthorized act of an agent the principal must have knowledge of all the material facts. And ignorance of such facts renders the alleged ratification invalid. Schenck v. Griffith, 74 Ark. 557, 86 S.W. 850; Niemeyer Lumber Co. v. Moore, 55 Ark. 240, 17 S.W. 1028; Martin v. Hickman, 64 Ark. 217, 41 S.W. 852; Coffin v. Planters' Cotton Co., 124 Ark. 360, 187 S.W. 309. But it is equally clear that it is the law of Arkansas that one who has knowledge of the material facts and remains silent when he should have spoken will be held to have ratified the unauthorized act of his agent. Coffin v. Planters' Cotton Co., supra; Haines v. Rumph, 147 Ark. 425, 228 S.W. 46; St. Louis-San Francisco R. Co. v. Lee Wilson & Co., 212 Ark. 474, 206 S.W.2d 175; Kelley v. Sparks, 193 Ark. 811, 102 S.W.2d 838.

In St. Louis-San Francisco R. Co. v. Lee Wilson & Co., supra [212 Ark. 474, 206 S.W.2d 178], the Supreme Court of Arkansas said:

"It is well settled that when a principal has knowledge of the unauthorized acts of his agent and remains silent when he should speak, or accepts the benefits of such acts, he cannot thereafter be heard to deny the agency, but will be held to have ratified said agent's unauthorized acts. Coffin v. Planters' Cotton Company, 124 Ark. 360, 187 S.W. 309, and cases there cited; Kirkpatrick Finance Co. v. Stotts, 185 Ark. 1089, 51 S.W.2d 512; Restatement of the Law of Agency, Vol. I, Sec. 94."

And in Kelley v. Sparks, supra [193 Ark. 811, 102 S.W.2d 840], the following was quoted with approval from 21 R.C.L. 927:

"Ratification of the unauthorized acts of one assuming to act as agent, may be either express or implied; express, as by spoken or written words; implied, when the conduct of the principal constitutes an assent to the acts in question. And the acts of the principal, it seems, will be liberally construed in favor of a ratification."

There was no ambiguity or uncertainty in the terms of the confirmation. Over the signature of defendant's agent it clearly advised plaintiff that defendant was selling 50,000 bushels of soybeans to plaintiff at the price of $2.08¼. Defendant therefore knew the commitment its agent was making on its behalf to plaintiff. Defendant was, under the foregoing Arkansas authorities, under the legal duty to correct the terms of the commitment within a reasonable time or be bound by it. Defendant's president and managing official testified that the price of soybeans fluctuated rapidly. Assuming for present purposes that the notice defendant's president testified he gave the broker on November 1, 1950, was notice to plaintiff, the trial court was warranted in holding that by defendant's silence ratification under the law had theretofore become complete.

In Runyan v. Community Fund, 182 Ark. 441, 31 S.W.2d 743, 744, cited by defendant, the Arkansas Supreme Court held that the notation "O.K." made on a letter accompanying a statement showing defendant owed a subscription of $1,000 for the year 1926, when he did not owe that subscription but misunderstood that statement and assumed it related to a subscription for the same amount which he did owe for 1927, did not amount to a ratification of the 1926 subscription because defendant did not know the statement he approved was for the 1926 subscription, although a careful reading of the letter accompanying the statement would have disclosed that fact. The court stated that one relying upon ratification of an unauthorized act of an agent must show that at the time of alleged ratification the principal had full knowledge of all material facts connected with the transaction. The opinion states that:

"In order to meet the requirements of the rule, full knowledge of

all the material facts connected with the transaction should have been shown, and not merely an opportunity to know all the material facts connected therewith. In other words, the doctrine of ratification is not based upon the carelessness or negligence of a principal in failing to find out all the material facts connected with the transaction, but is based upon his actual knowledge thereof."

In the Runyan case the party who had erroneously assumed that a subscription had been made for 1926 and who had made a notation to that effect, which prompted the auditor to send the erroneous statement, was not the agent of the defendant. The fact was established that defendant did not know the statement was a request for payment of a 1926 subscription at the time he O.K.'d it. Upon both grounds the court held there was no ratification. We are not convinced that the trial court misinterpreted the law of Arkansas in not treating the Runyan case as controlling here. We have read and reread the testimony of defendant's president who handled this transaction. No interference may be drawn from his testimony that he did not know of the terms of the commitment. He says that he received it and treated it as a memorandum needing no acknowledgment. Under the law it needed no acknowledgment only in the event it was correct. Lack of knowledge of the legal effect of defendant's nonaction will not avoid ratification. Defendant owed the legal duty under the circumstances to correct its agent's commitment within a reasonable time or be bound by it. We cannot relieve it of that duty. In the absence of an applicable established practice or custom, or an agreement between the parties fixing the time within which notice should be given of an improper act of an agent, the timeliness of such action will be determined by the facts and circumstances in each case. It may well be that under some circumstances the question will be one for a jury. But under the undisputed facts of this case, notice was not given within a reasonable time and if the jury had found to the contrary it would have been the duty of the court to set such finding aside. The legal effect of defendant's nonaction was ratification, insofar as plaintiff's rights were concerned. The rights and obligations between defendant and the broker are not involved or determined.

The judgment is affirmed.